United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 5, 2005**

Charles R. Fulbruge III
Clerk

REVISED AUGUST 25, 2005

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-10531

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

RICHARD MICHAEL SIMKANIN

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before KING, Chief Judge, DAVIS, Circuit Judge, and ROSENTHAL,[*]
District Judge.

KING, Chief Judge:

Defendant-Appellant Richard Michael Simkanin appeals his
conviction for ten counts of willfully failing to collect and pay
over employment taxes in violation of 26 U.S.C. § 7202, fifteen
counts of knowingly making and presenting false claims for refund
of employment taxes in violation of 18 U.S.C. §§ 287 and 2, and
four counts of failing to file federal income tax returns in
violation of 26 U.S.C. § 7203.  He also appeals his sentence of

---

[*]    District Judge of the Southern District of Texas,
sitting by designation.

-1-

eighty-four months imprisonment.  For the following reasons, we AFFIRM Simkanin's conviction and sentence.

## I.  BACKGROUND

Defendant-Appellant Richard Simkanin owned Arrow Custom Plastics, Inc. ("Arrow") since its incorporation in 1982.  In 1993, Simkanin met with an accountant, Jim Kelly, who advised him that he would need to change Arrow's accounting method and that this change would result in an increase in Arrow's corporate income tax.  Simkanin thereafter began to question the federal tax system's applicability to him and its validity in general.  On his 1994 and 1995 individual income tax returns, he made notations (i.e., "UCC 1-207") apparently in an attempt to indicate that the returns were filed under protest.  He did not file individual tax returns for the years 1996-2001.

With respect to the 1996 and 1997 returns, Simkanin told Kelly that he was not required to file returns because he did not receive any income but rather lived entirely off of his savings.  However, this statement was false--Simkanin did in fact receive a salary from Arrow during these years, and his salary was sufficiently high such that Simkanin owed federal income taxes.  On Arrow's books, Simkanin's salary was initially identified as "officer salary" and then later as "remuneration," without any reference to Simkanin being the recipient of the funds.  During these years, Simkanin also received payment from Arrow for his

-2-

personal expenses, which were booked as "repair and maintenance."

In 1996, Simkanin surrendered his Texas driver's license, and when stopped by the police while driving, he showed a card styled "British West Indies International Motor Vehicle Qualification Card," which he had acquired from a mail order business in Connecticut. He also mailed to the U.S. Treasury Secretary a statement that he had expatriated himself from the United States and repatriated to the Republic of Texas. He posted the same statement on Arrow's internet website, where he also vowed to ignore the laws of the United States.

In 1997, Simkanin removed his name from Arrow's checking and credit card accounts, replacing his name with the name of Arrow's bookkeeper Dianne Clemonds. Simkanin told Clemonds that he did not want his name to appear on documents requiring his social security number. Simkanin then listed Clemonds as Arrow's president on various legal documents, although he retained complete de facto responsibility for the company's affairs and continued to make all of the decisions regarding finances and taxes.

By May 1999, Simkanin had become involved with an organization called We The People Foundation for Constitutional Education ("WTP"), which promotes the view that, despite common misconceptions, there is actually no law that requires most Americans to pay income taxes or most companies to withhold taxes from employees' paychecks. WTP also espouses the view that the

Sixteenth Amendment was fraudulently declared to have been ratified. In accordance with these views, Simkanin told accountant Kelly and others that he was not required to pay taxes and that filing returns was purely voluntary. Kelly advised Simkanin that filing returns was not voluntary and that Simkanin could get into trouble if he did not file. Simkanin rejected this advice, and he began to pressure Arrow's employees to attend seminars sponsored by WTP.

In November 1999, Simkanin told Kelly that Arrow would no longer withhold employment taxes from employees' paychecks. Kelly counseled against this course of action. In response to Simkanin's stated intentions, Clemonds consulted with an attorney. She was advised that she could be personally liable if she went along with Simkanin's plan to stop collecting and paying over taxes. Clemonds therefore resigned from her position at Arrow, and Simkanin returned his name to the Arrow bank accounts as sole signatory. He then stopped Arrow's withholding of federal taxes from the wages paid to its employees.

In January 2000, Simakanin filed with the IRS fifteen claims for tax refunds. He claimed he was owed refunds for taxes paid by Arrow in 1997-99 and also for the taxes collected from, and paid by, Arrow's employees. The IRS denied all of these claims, and Simkanin did not seek further review.

In March 2000, Kelly and Fred Taylor, a named partner in Kelly's accounting firm, went to Simkanin's office to discuss his

-4-

refusal to withhold and pay federal taxes or file returns. Simkanin reiterated that he had no intention of paying taxes. Taylor advised Simkanin that he could be criminally prosecuted for his actions and, by letter dated March 28, 2000, terminated Simkanin and Arrow as clients.

On March 2, 2001, a full page advertisement by WTP appeared in USA Today. The ad prominently displayed the photographs of five men, including Simkanin. The advertisement stated, inter alia, that Simkanin and the other men pictured had stopped withholding taxes from their workers' paychecks and that they were part of a "growing number of people" who believe that:

> 1. There is no law that requires workers, as U.S. citizens earning their money from domestic companies, to pay income or employment taxes; nor to have those taxes withheld;
>
> 2. The 16th Amendment (the "Income Tax Amendment") was fraudulently declared to be ratified by the Secretary of State in 1913.

The ad concluded with a request for "donations" to WTP.

On March 14, 2001, Simkanin was advised that he was the target of a criminal investigation regarding his failure to file individual income taxes since 1995 and his failure to collect and pay over employment taxes since January 2000. In July 2001, Simkanin was served with a grand jury subpoena that sought the corporate records of "Arrow Custom Plastics, Inc." In response to the subpoena, Simkanin dissolved the corporation and operated Arrow as a sole proprietorship. Despite Simkanin's refusal to

-5-

produce Arrow's corporate records, the government was able to obtain information about the amount of wages paid to Arrow's employees from the Texas state agency that collected unemployment taxes from Arrow.

On June 19, 2003, an indictment was returned, charging Simkanin with twelve counts of willfully failing to collect and pay over federal income taxes and Federal Insurance Contribution ("FICA") taxes from the total taxable wages of Arrow employees in violation of 26 U.S.C. § 7202,[1] and fifteen counts of filing false claims for tax refunds in violation of 18 U.S.C. § 287. On August 13, 2003, a superceding indictment was returned, charging Simkanin with the same substantive crimes but stating the applicable law more fully.

On September 3, 2003, the parties filed a plea agreement and a factual resume in which Simkanin pled guilty to four counts of the superceding indictment. However, the plea agreement misstated the maximum penalty to be lower than the actual maximum of five years imprisonment and three years supervised release. The government notified the court that Simkanin had not actually

---

[1] Section 7202 provides:

Any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

agreed to plead to a count with the  maximum penalty of five years incarceration.  The court ultimately ordered a deadline for completing a plea agreement, and when the government and Simkanin had not agreed to a new plea agreement by that date, the case went to trial.

Simkanin's first trial began on November 25, 2003.  A number of Simkanin's supporters were present outside the courthouse handing out pamphlets on jury nullification.  The jury was unable to reach a unanimous verdict, and the district court declared a mistrial.  One of the jurors subsequently contacted the court's staff and expressed concern about the behavior of Simkanin's supporters and one of the members of the jury.  It was later revealed that some of the jurors had been contacted by Simkanin's supporters.

On December 17, 2003, a second superceding indictment was returned, charging Simkanin with the same offenses in the first superceding indictment plus four additional counts of failure to file individual income tax returns.  Counts One through Twelve charged Simkanin with willfully failing to collect and pay over federal income taxes and FICA taxes from the total taxable wages of Arrow employees in violation of 26 U.S.C. § 7202 (with each count pertaining to a different tax quarter).  Counts Thirteen through Twenty-Seven charged Simkanin with knowingly making and presenting fifteen false claims for the payment of refunds of the employer's share of FICA taxes paid by Arrow and of the

-7-

employees' share of FICA taxes and income taxes collected from Arrow's employees in violation of 18 U.S.C. §§ 287 and 2. Finally, Counts Twenty-Eight through Thirty-One charged Simkanin with failing to file federal income tax returns in violation of 26 U.S.C. § 7203.

The second trial began on January 5, 2004.[2] Simkanin primarily attempted to establish that he did not willfully violate the tax laws because he held a good-faith belief that he was not obligated to pay individual income taxes or to withhold employment taxes from the wages paid to Arrow's employees. Simkanin took the stand and testified that, inter alia, according to his own research: (1) the Constitution provides for two types of taxes--a direct tax and an indirect tax; (2) the income tax is an indirect tax; (3) a man's labor is his own property and cannot be subject to an indirect tax; and (4) the wages that a person receives for his labor are not subject to the income tax. Simkanin further testified that he stopped paying his income taxes and stopped withholding employment taxes from the wages of Arrow's employees because he "could not find out what the tax was on."

To support his defense, a number of other witnesses testified that they had informed Simkanin that the federal income

---

[2]    Simkanin's supporters were again outside the courthouse and inside the courtroom.  However, security measures were taken to prevent the supporters from contacting members of the jury pool or the selected jurors.

tax laws, as written, did not require Simkanin to pay taxes and that the income tax was constitutionally invalid. Joseph Banister, a supporter of WTP, testified that he met Simkanin at a conference entitled "Citizens' Summit to End the Unlawful Operations of the Internal Revenue Service," at which Banister was a speaker. Robert Schultz, founder and CEO of WTP, testified that he advised Simkanin that his research showed that the Sixteenth Amendment had been fraudulently declared to have been ratified and that the constitutional definition of the word "income" is different than the common understanding of income. Larken Rose testified that, through phone conversations with and emails to Simkanin, he explained that the income of the average American is not subject to the federal income tax and that the law merely applies to people engaged in certain types of international trade. Banister, Schultz, and Rose all testified that they did not advise Simkanin to stop withholding taxes or to stop filing tax returns. Eduardo Rivera, an attorney from California, testified that he had consulted with Simkanin in 1999, that Simkanin had paid him over $10,000, and that he told Simkanin that his employees had no legal duty to pay a tax and that Simkanin only had a duty to send money on their behalf to the government if he contracted with them to do so.[3]

---

[3] Rivera admitted on cross-examination that in 2003 a permanent injunction had been entered against him, barring him from making such statements.

A government witness, a district director for Congressman Joe Barton, testified that Simkanin had corresponded with Barton's office regarding taxes and the IRS. Barton's office had received, and forwarded to the IRS, letters written by Simkanin expressing his view that he was not required to withhold taxes from his workers' paychecks and that wages are not a source of income subject to federal taxation. The district director testified that Barton's office responded with a letter stating that Simkanin's stated opinions were based on a flawed interpretation of the Internal Revenue Code (the "IRC"), that wages are indeed taxable under federal laws and regulations, and that Simkanin's interpretation had been rejected by the courts.

The jury began its deliberations on January 6, 2004, and on January 7, it returned a verdict of guilty as to Counts Three through Thirty-One. The jury was unable to reach a verdict as to Counts One and Two, and the government moved to dismiss those counts, which the district court did.

At sentencing, the district court applied the 2003 version of the United States Sentencing Guidelines, and it determined Simkanin's criminal history category to be I and his offense level to be Twenty-Two, with a corresponding sentencing range of forty-one to fifty-five months imprisonment. The court decided to depart upwardly from that range, concluding that a range of eighty-four to 105 months more appropriately reflected the likelihood that Simkanin would re-offend. The court then imposed

-10-

a sentence of eighty-four months.  Simkanin appeals both his conviction and his sentence.

## II.  DISCUSSION

### A.  The District Court's Response to the Jury Note

Simkanin argues that the district court, when providing a supplemental jury instruction in response to a note from the jury, directed a verdict in favor of the prosecution with respect to one or more essential elements of the offense.  We review de novo whether a jury instruction directed a verdict on an element of the offense.  See United States v. Bass, 784 F.2d 1282, 1284 (5th Cir. 1986).  In light of the particular circumstances involved in this case, we conclude that the district court did not direct a verdict for the government on an element of the offense.

In Cheek v. United States, 498 U.S. 192, 201-03 (1991), the Supreme Court defined "willfulness" for prosecutions under the IRC as requiring a "voluntary, intentional violation of a known legal duty."  The Court reasoned that because of the complexity of the tax laws, willful criminal tax offenses must be treated as an exception to the general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution.  Id. Moreover, the Court found that a defendant's good-faith belief that he was not violating the law need not be objectively reasonable to negate willfulness.  Id.  However, the Court

-11-

distinguished a defense based on the defendant's good-faith belief that he was acting within the law from a defense based on the defendant's views that the tax laws are unconstitutional or otherwise invalid.  Id. at 204-06.  The Court held that the latter belief, regardless of how genuinely held by the defendant, does not negate the willfulness element.  Thus, the Court concluded that evidence pertaining to a defendant's beliefs that the tax laws are invalid is irrelevant to establishing a legitimate good-faith defense.  Id.; see also FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS: CRIMINAL § 1.38 (West 2001).

The availability of the good-faith defense, while undeniably sound,[4] creates a number of complications and challenges for a district court beyond those arising in the usual criminal trial, in which the defendant's beliefs about what the law requires are not at issue.  The defendant in a criminal tax trial, unlike most other defendants, must be permitted to present evidence to show what he purportedly believed the law to be at the time of his allegedly criminal conduct.  At the same time, however, the district court must be permitted to prevent the defendant's alleged view of the law from confusing the jury as to the actual state of the law, especially when the defendant has constructed

---

[4]     See, e.g., United States v. Burton, 737 F.2d 439, 441 (5th Cir. 1984) (noting "the pervasive intent of Congress to construct penalties that separate the purposeful tax violator from the well-meaning, but easily confused, mass of taxpayers." (internal quotation marks omitted)).

an elaborate, but incorrect, view of the law based on a misinterpretation of numerous IRC provisions taken out of proper context.  See, e.g., United States v. Barnett, 945 F.2d 1296, 1300 (5th Cir. 1991) (stating that "[t]he jury must know the law as it actually is respecting a taxpayer's duty to file before it can determine the guilt or innocence of the accused for failing to file as required").  The district court in this case, like other courts in similar cases, struggled to balance these two competing concerns when it answered the jury's confusion as to the correct interpretation of the law, which unsurprisingly resulted from Simkanin's testimony about his own erroneous beliefs about the law.  Thus, it is with this set of circumstances in mind that we consider Simkanin's arguments on appeal.

In its initial instructions, the district court instructed the jury that, in order to convict Simkanin on Counts One through Twelve (willfully failing to collect and pay over federal taxes from the total taxable wages of Arrow employees in violation of 26 U.S.C. § 7202), the jury must find beyond a reasonable doubt that: (1) Arrow was an employer that paid wages to its employees; (2) Simkanin was an official of Arrow who had responsibility for its decisions regarding the withholding from its employees' wages of Medicare, social security, and federal income taxes, the accounting for such taxes, and the payment of such taxes over to the IRS; (3) Simkanin caused Arrow not to withhold and not to

-13-

account truthfully for and pay over such taxes; and (4) Simkanin's conduct in causing Arrow not to withhold, account for, and pay over such taxes was willful. The court further instructed the jury that:

> Within the meaning of [26 U.S.C. § 7202], during the years 2000, 2001, and 2002, [Arrow], through its responsible officials, had a legal duty to collect, by withholding from the wages of its employees, the employees' share of social security taxes, Medicare taxes, and federal income taxes, and to account for those taxes and to pay withheld amounts to the United States of America.

Simkanin did not object to these instructions at the time they were given.

At trial, Simkanin testified that one reason behind his decision not to withhold taxes from Arrow's employees was his belief that the IRC, which is over 7,000 pages long, contains an extensive (and exclusive) list of industries and activities. Simkanin stated that because Arrow did not operate in any of the listed industries or perform any of the listed activities, he concluded that Arrow's workers were not employees under the IRC and that he therefore was not required by law to withhold taxes. He further stated that he believed that the definition of an "employee" under the IRC was limited only to persons who worked for a governmental entity including the state or a political subdivision thereof.[5]

---

[5] Simkanin's position, as defense counsel concedes, was based on an incorrect view of the law. See, e.g., 26 U.S.C. §§ 3121(a)-(d), 3306(a)-(c), 3401(a)-(d); 26 C.F.R. §§ 31.3121(a)-(d), 31.3306(a)-(c), 31.3401(a)-(d); Breaux &

-14-

During its deliberations, the jury sent a note to the district judge asking the following question:

Since no proof has been made that the defendant and his employees are in an occupation listed in those 7,000 [pages], are we to conclude that they are, in fact, not in that 7,000, or do we need to read all 7,000 to see what the defendant was referring to, and in fact, wasn't listed in the 7,000[?]

The court responded to the jury's question by stating:

Now, in answer to your note: You are instructed that you do not need to concern yourself with whether defendant's employees are in an occupation "listed in those 7,000." The Court has made a legal determination that within the meaning of Title 26, United States Code, Section 7202, during the years 1997, 1998, 1999, 2000, 2001, and 2002, [Arrow], through its responsible officials, had a legal duty to collect, by withholding from the wages of its employees, the employees' share of the social security taxes, Medicare taxes, and federal income taxes, and to account for those taxes and pay the withheld amounts to the United States of America. You are to follow that legal instruction without being concerned whether there are certain employers who are not required to collect and withhold taxes from the wages of their employees.
        Of course, you will bear in mind in your deliberations all other instructions the Court has given you concerning the law applicable to this case.

Defense counsel objected to the court's response on the ground that, inter alia, the response "amount[ed] to an instructed verdict of guilty by instructing [the jury] on that point since

_____

Daigle, Inc. v. United States, 900 F.2d 49, 51-53 (5th Cir. 1990); see also Otte v. United States, 419 U.S. 43, 50-51 (1974). This fact is undisputed on appeal, and it is abundantly clear that Simkanin's testimony on his views regarding the definition of an "employer" and "employees" was elicited to support his defense of a good-faith belief, not to show that Arrow was not an employer under the IRC.

-15-

that is the disputed issue and the basis for his defense."[6]

The trial transcript, as well as Simkanin's initial brief, make perfectly clear that the disputed issue at trial was whether Simkanin <u>willfully</u> violated the federal tax laws.  The basis for his defense was that he did not <u>willfully</u> fail to collect and pay over taxes in violation of § 7202 (and that he did not <u>knowingly</u> present false claims for refund) because he believed in good faith that he was not required by law to withhold such taxes.

Simkanin argues on appeal that the district court's response to the jury note constituted a directed verdict on an essential element of the offense, and therefore reversible error, for two reasons.  First, Simkanin argues that the court's response erroneously instructed the jury to disregard Simkanin's good-faith defense.  Second, he asserts that the court directed a verdict for the prosecution on the first element of the § 7202 offense--that Arrow was an employer that paid wages to its employees.  He contends that the district court's error in this regard warrants the vacatur of his conviction as to Counts 3-12 (willful failure to withhold) and Counts 13-27 (false claims of refund for taxes withheld).

As we stated in <u>United States v. Cantu</u>, 185 F.3d 298, 305-06

---

[6]     We assume, without deciding, that Simkanin's objection to the district court's response to the jury note preserved the alleged error, even though he did not object to the district court's original instruction containing the same language.  Thus, we do not review the alleged error under the considerably less defendant-friendly plain-error standard under FED. R. CRIM. P. 52(b).

(5th Cir. 1999):

> The district court enjoys wide latitude in deciding how to respond to questions from a jury . . . . Overall, we seek to determine whether the court's answer was reasonably responsive to the jury's questions and whether the original and supplemental instructions as a whole allowed the jury to understand the issue presented to it.

(internal citation and quotation marks omitted). "It is well established that the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." Estelle v. McGuire, 502 U.S. 62, 72 (1991) (internal quotation marks omitted).

In arguing that the district court's response directed the jury to disregard his good-faith defense, Simkanin relies on United States v. Burton, 737 F.2d 439 (5th Cir. 1984), a case involving a defendant's failure to file income tax returns. In Burton, the district court instructed the jury that "[t]he court has ruled as a matter of law that a good faith belief that wages are not income is not a defense to the charges in this case." 737 F.2d at 440. We reversed, holding that a defendant's good-faith belief that the tax laws did not require him to file returns (as opposed to a belief that the tax laws are invalid or unconstitutional) would have negated the willful element of the charged offense and therefore constituted a valid defense.[7] Id.

---

[7] Similarly, Simkanin cites Cheek, 498 U.S. at 192, for the proposition that a district court errs when it instructs a jury to disregard the defendant's evidence of a good-faith

-17-

at 441-42.  Burton is easily distinguishable, however, because unlike the district court in Burton, the district court in the present case did not explicitly instruct the jury to disregard the defendant's beliefs about the applicability of the tax laws. Rather, the court instructed the jury that the defendant's purported view of the law--that the fact that the IRC did not list his business activities alleviated him from a legal duty to withhold taxes--was incorrect.  Thus, the district court acted properly under the circumstances.  See Barnett, 945 F.2d at 1300. We see nothing in the district court's instruction that would have led the jury to believe that it must disregard Simkanin's good-faith defense on the willfulness element, especially because the court specifically instructed the jury to keep in mind the other instructions, which included its instruction on willfulness.[8]  Thus, the jury remained free to decide the contested issue in the trial, i.e., whether Simkanin's violations of the tax laws were willful as that term was properly defined in the jury instructions.

Second, in a clever reconstruction of the district court's response to the jury note, Simkanin argues that the court's response constituted a directed verdict on another element of the offense, which was uncontested at trial--namely, the requirement

---

misunderstanding of the tax laws.

[8]    As we discuss below, the district court adequately instructed the jury on the willfulness element to allow Simkanin to advance his good-faith defense.

that Arrow was an employer that paid wages to its employees.

Counsel contends that, after the court informed the jury of its legal determination that Arrow had a legal duty to withhold, the jury logically could no longer find that Arrow was not an employer that paid wages to its employees--for if the jury found that Arrow was not an employer that paid wages to its employees, then it would mean that Arrow, in effect, did not have a legal duty to withhold taxes. This reading of the court's response, while plausible in a literal sense, is entirely divorced from a reading of the instructions as a whole, as well as from the context in which the jury asked its question and the court responded.

Simkanin relies heavily on this court's decision in Bass, 784 F.2d at 1282. In Bass, the defendant was charged with willfully submitting false or fraudulent income tax withholding exemption statements to employers in violation of 26 U.S.C. § 7205. 784 F.2d at 1283. The defendant asserted as one of his defenses that he could not be held criminally liable under § 7205 because he was not an "employee" for the purpose of supplying withholding information on a W-4 to his employer. Despite this defense, the district court in Bass instructed the jury that "as a matter of law the defendant . . . was an employee of" the company in question. Id. at 1284. We found this instruction to be constitutionally erroneous because, "by instructing the jury that Bass was an employee, the district court relieved the

-19-

prosecution of its duty of proving, beyond a reasonable doubt, Bass's guilt of <u>every</u> element of the offense charged." <u>Id.</u> at 1284-85.

Unlike in <u>Bass</u>, however, the district court in the present case did not explicitly direct a verdict on an essential element of the offense. At most, the court's response, when viewed in isolation, could be interpreted as <u>implicitly</u> requiring the jury to find that Arrow was an employer that paid wages to its employees, lest the jury's finding on that element logically conflict with the district court's instruction. However, the district court also expressly instructed the jury at least twice that, in order to convict Simkanin under § 7202, it must determine beyond a reasonable doubt that Arrow was an employer that paid wages to its employees. Furthermore, when the court answered the jury's question, it reminded the jury to consider all the other instructions that had been given. Thus, when viewed in the context of the entire jury charge, the district court's response merely instructed the jury that Simkanin's belief that he was not required to withhold taxes because Arrow's activities were not listed in the 7,000 pages of the IRC was an incorrect view of the law, and that, if the jury found that Arrow was an employer that paid wages to its employees, Simkanin had a legal duty to withhold despite his professed belief to the

contrary.[9]  Hence, the district court's answer was reasonably responsive to the jury's question and was a correct statement of the law--it instructed the jury that whether or not Arrow's business activity appears on a list in the IRC is irrelevant to whether Simkanin had a legal duty to withhold.  See Cantu, 185 F.3d at 305-06.  The original and supplemental instructions as a whole allowed the jury to understand the issue presented to it and required the jury to decide whether the government had proven each essential element beyond a reasonable doubt.  See id.  Accordingly, we conclude that, when the district court's response is viewed in the context of the instructions in their entirety, there was not a reasonable likelihood that the jury applied the instruction as if it were a directed verdict on that element of the offense.  See United States v. Phipps, 319 F.3d 177, 189-90 (5th Cir. 2003) ("The question is . . . whether this single misstatement makes the instruction defective as a whole. . . . [T]he proper inquiry is not whether the instruction could have been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury did so apply it." (internal citation and quotation marks omitted)); United States v. Musgrave, 483 F.2d 327, 335 (5th Cir. 1973).  Accordingly, we find no error in the district court's response to the jury note.

Moreover, even if we were to conclude that the district

_____

[9]    Moreover, it is of no event that the district court used the term "employees" in its response because the jury's own question referred to Arrow's "employees."

court's response to the jury note was erroneous, which we do not, we still would not reverse on this ground. In this case, both parties agree that we should affirm if the government proves that the alleged error was harmless beyond a reasonable doubt.[10] See Neder v. United States, 527 U.S. 1 (1999); Chapman v. California, 386 U.S. 18, 23 (1967). Therefore, we would proceed under that assumption, and we would conclude that the government has met its burden to establish that any error here was harmless. In Bass, 784 F.2d at 1285, we stated that we could not deem the court's explicit directed verdict on the "employee" element harmless "[b]ecause one of Bass's defenses was that he was not an 'employee[]' . . . ." Here, however, one of Simkanin's defenses was not that Arrow was not an employer that paid wages to its employees under the IRC (although one of his defenses was that he did not willfully violate the law because he erroneously believed that Arrow was not an employer that paid wages to its employees under the IRC). During the course of the trial, defense counsel introduced no evidence that Arrow was not an employer that paid wages to its employees, and defense counsel did not argue or otherwise suggest during the trial that the prosecution had not

_____

[10]  Although at oral argument Simkanin's defense counsel argued that the type of error alleged here is not subject to harmless-error review, defense counsel, in supplemental briefing submitted after oral argument, reverted to the position taken in its initial briefs--i.e., that if the district court's response directed a verdict on an essential element of the offense, the error is subject to harmless-error analysis and that we may affirm only if the government establishes that the error was harmless beyond a reasonable doubt.

-22-

established this element beyond a reasonable doubt.  On appeal, Simkanin does not point to any evidence introduced supporting the notion (or any conceivable basis upon which a rational juror could conclude) that Arrow was not an employer that paid wages to its employees under a legally accurate interpretation of the relevant sections of the IRC.  Rather, Simkanin falls back on the argument that it is possible that the jury could have decided that the government's evidence, although uncontradicted, did not establish that element beyond a reasonable doubt.  However, we believe that it would have been irrational for the jury to do so, and Simkanin's argument does not suffice to raise a reasonable doubt in our minds that the jury might have concluded that Arrow was not an employer that paid wages to its employees.  This is an instance in which the relevant element was "supported by uncontroverted evidence" and in which the "defendant did not, and apparently could not, bring forth facts contesting the omitted element."  Neder, 527 U.S. at 18-19.  Accordingly, applying the harmless-error standard agreed upon by the parties, we would find any error here to be harmless beyond a reasonable doubt.

**B.  Instruction on Good-Faith**

Simkanin next argues that the district court erred by refusing to include a specific jury instruction on his good-faith defense.  As noted above, the district court's instructions with respect to Counts 1-12 (failure to withhold) stated that the jury must find beyond a reasonable doubt that Simkanin's conduct in

causing Arrow not to withhold and not to account truthfully for and pay over such taxes was willful.  In elaborating on the meaning of the term "willful," the court instructed the jury that:

> To act willfully means to act voluntarily and deliberately and intending to violate a known legal duty. For the government to establish willfulness as to Counts 1-12 of the indictment, it must prove beyond a reasonable doubt as to the count in consideration that defendant knew of the requirements of federal law that [Arrow] collect, by withholding from its employees' wages, Medicare taxes, social security taxes, and federal income taxes, and to account for such taxes and pay them over to the [IRS], and that he voluntarily and intentionally caused [Arrow] to fail to comply with these requirements.

With respect to Counts 13-27 (false or fraudulent refund claims), the court instructed that the government must prove beyond a reasonable doubt that: (1) Simkanin "knowingly presented to an agency of the United States a false or fraudulent claim against the United States;" (2) Simkanin "knew that the claim was false or fraudulent;" and (3) the false or fraudulent claim was material.  The court instructed that "knowingly, as that term has been used in these instructions, means that the act was done voluntarily and intentionally, not because of a mistake or accident."

Finally, with respect to Counts 28-31 (failure to file returns), the court instructed the jury that it must find beyond a reasonable doubt that: (1) Simkanin received gross income in the amounts stated in the indictment for the year in question (this element was satisfied by a stipulation); (2) Simkanin

-24-

failed to file an income tax return, as required, by the date stated in the indictment; (3) Simkanin knew he was required to file a return; and (4) Simkanin's failure to file was willful. The court then reminded the jury "that to act willfully means to act voluntarily and deliberately and intending to violate a known legal duty." The court further stated that "[f]or the government to establish willfulness as to Counts 28-31 of the indictment, it must prove beyond a reasonable doubt as to the count under consideration that the defendant knew of the requirement of federal law that he file an income tax return, and that he voluntarily and intentionally failed to do so."

Defense counsel objected to these instructions on the ground that they did not include a specific instruction on good faith under Cheek, 498 U.S. at 192. Counsel argued that, for this reason, the district court failed to instruct the jury on the defense's theory of the case. Defense counsel also objected to the use of the phrase "known legal duty," rather than "known to the defendant." The district court overruled these objections.

This court reviews a district court's refusal to include a defendant's proposed jury instruction in the charge under an abuse of discretion standard. United States v. Rochester, 898 F.2d 971, 978 (5th Cir. 1990). The district court abuses its discretion by refusing to include a requested instruction only if that instruction: (1) is substantively correct; (2) is not substantially covered in the charge given to the jury; and (3)

-25-

concerns an important point in the trial so that the failure to give it seriously impairs the defendant's ability to present effectively a particular defense.  United States v. St. Gelais, 952 F.2d 90, 93 (5th Cir. 1992).  Under this test, this court will not find an abuse of discretion where the instructions actually given fairly and adequately cover the issues presented by the case.[11]  Rochester, 898 F.2d at 978.

As we discussed above, in Cheek, 498 U.S. at 201-04, the Supreme Court defined "willfulness" for prosecutions under the IRC as requiring a "voluntary, intentional violation of a known legal duty."  The Court further found that, because of the complexity of the federal tax laws, criminal tax offenses with willfulness as an element must be treated as an exception to the general rule that a mistake of law is not a valid defense.  Id. Thus, a defendant's good-faith belief that he is acting within the law negates the willfulness element.  On the other hand, a defendant's good-faith belief that the tax laws are unconstitutional or otherwise invalid does not negate the willfulness requirement, and such evidence is therefore irrelevant to a good-faith defense.  Id.; see also FIFTH CIRCUIT

---

[11]     Relying on language from Mathews v. United States, 485 U.S. 58, 63 (1988), Simkanin argues that he was entitled to an instruction on any defense supported by the evidence.  However, Mathews addresses whether a defendant can simultaneously raise contradictory defenses, and the broader language from Mathews has no bearing on the issue presented here because the district court did not deny Simkanin's requested instruction on the basis that it was not supported by sufficient evidence.  See Mathews, 485 U.S. at 63.

-26-

The Supreme Court in <u>Cheek</u> derived its definition of willfulness from <u>United States v. Pomponio</u>, 429 U.S. 10 (1976) (per curiam). In <u>Pomponio</u>, a case involving criminal charges of falsifying tax returns, the district court instructed the jury that a willful act meant "one done voluntarily and intentionally and with the specific intent to do something which the law forbids, that is to say with [the] bad purpose either to disobey or to disregard the law." 429 U.S. at 11 (internal quotation marks omitted) (alterations in original). The district court also instructed the jury that "'[g]ood motive alone is never a defense where the act done or omitted is a crime,' and that consequently motive was irrelevant except as it bore on intent." <u>Id.</u> (alteration in original). The court of appeals held that the final instruction was improper because the relevant statute required a finding of bad purpose or evil motive. <u>Id.</u> The Supreme Court reversed, noting that the court of appeals incorrectly assumed that the reference to "evil motive" in an earlier Supreme Court case meant something more than specific intent to violate the law. <u>Id.</u> The Court stated that "willful," as the term is used in the tax statutes, means "a voluntary, intentional violation of a known legal duty." <u>Id.</u> The Court determined that because the district court had instructed the jury as to that definition, the jury had been adequately instructed on willfulness, and an additional instruction on good

-27-

faith was thus unnecessary.  Id.

Accordingly, the district court in the present case was not required to include a specific instruction on good-faith because it adequately instructed the jury on the meaning of willfulness under Cheek and Pomponio.  In other words, Simkanin's requested instruction was "substantially covered in the charge given to the jury" regarding willfulness.  See St. Gelais, 952 F.2d at 93.  In addition, taken together, the trial, charge, and closing argument laid the theory of the defense squarely before the jury, and the lack of the requested instruction did not seriously impair Simkanin's ability to present effectively his good-faith defense.[12]  Id.; United States v. Proctor, No. 03-20309, 118 Fed.

---

[12]    As discussed more fully below, Simkanin argues that the district court restricted his ability to present his good-faith defense at trial.  However, we address here Simkanin's argument concerning closing argument.  Simkanin notes that the district court limited defense counsel to only fifteen minutes for closing argument.  However, he concedes that he did not object below on this basis, and he explicitly states that he does not challenge on appeal the district court's limitation of closing argument.  At the same time, however, Simkanin argues that the limitation on closing argument should shade our analysis of the issues that he actually raises on appeal.  In light of the particular circumstances of this case, we do not agree that the limitation on closing argument somehow rendered the instruction on willfulness erroneous.  Defense counsel was entirely free to argue, and did in fact argue, the good-faith defense to the jury during the allotted time period, and, as discussed below, the district court did not unfairly restrict Simkanin's presentation of evidence to establish that defense.  The restriction on closing was applied evenhandedly to both the defense and the prosecution.  The trial lasted only two days and involved relatively few witnesses.  It involved a single theory of the defense, which was based on Simkanin's beliefs about the requirements of the federal tax laws (not the validity of those laws, which are irrelevant to willfulness under Cheek).  Thus, we are not persuaded that the limitation on closing unfairly

Appx. 862, 863 (5th Cir. Dec. 30, 2004) (per curiam) (unpublished) (quoting United States v. Gray, 751 F.2d 733, 735-36 (5th Cir. 1985)).

Finally, Simkanin complains that the phrase "known legal duty" in the instructions did not make it clear that the legal duty must have been known to the defendant. This claim ignores the next sentence of the instructions, which stated: "For the government to establish willfulness as to Counts 1-12 of the indictment, it must prove beyond a reasonable doubt as to the count in consideration that defendant knew of the requirements of federal law . . . and that he voluntarily and intentionally caused [Arrow] to fail to comply with these requirements." Similarly, Simkanin ignores the actual language of the district court's instructions when, citing FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS: CRIMINAL § 1.37, he asserts that the district court did not instruct the jury that a defendant did not "knowingly" commit a tax offense if he acted by mistake. In fact, as noted above, the district court explicitly instructed the jury that "knowingly, as that term has been used in these instructions, means that the act was done voluntarily and intentionally, not because of a mistake or accident." Thus, Simkanin's argument fails.

## C. Evidentiary Rulings

---

curtailed defense counsel's ability to present Simkanin's good-faith defense.

Simkanin's last argument with respect to his conviction is that the district court unfairly and arbitrarily excluded defense evidence and restricted the scope of cross-examination, thus hampering the presentation of his good-faith defense.  We review a district court's rulings on the admission or exclusion of evidence for an abuse of discretion.  <u>United States v. Flitcraft</u>, 803 F.2d 184, 186 (5th Cir. 1986).

Simkanin argues that the district court erred because it allowed him only briefly to say what he knew, believed, and understood, but that it did not allow him to corroborate his sincerity in these assertions because it excluded from evidence certain documents on which Simkanin allegedly relied for his beliefs about the tax laws.[13]  The district court, however, explained that it did so because the documents would tend only to confuse the jury about the relevant issues in the case and were cumulative of Simkanin's testimony about what the documents said and how he relied upon them in forming his beliefs about what the tax laws required of him.  Rule 403 of the Federal Rules of Evidence states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste

---

[13]    Simkanin does not specifically identify all of the evidentiary rulings that he claims were erroneous; rather, he advances a broader contention that the district court's evidentiary rulings as a whole prejudiced his ability to assert his defense.

-30-

of time, or needless presentation of cumulative evidence." In this instance, the district court did not abuse its discretion in concluding that the probative value of this evidence was far outweighed by its tendency to confuse the jury as to the correct state of the law and by its cumulative nature.

In Flitcraft, 803 F.2d at 185-86, we addressed the defendants' claim that the district court had erred in excluding the documents upon which they allegedly relied in forming their beliefs about the tax laws; the defendants argued that such documents would increase the likelihood that the jury would credit the sincerity of the defendants' purported beliefs. This court held that the district court did not abuse its discretion in excluding the evidence under FED. R. EVID. 403 because the documents had little probative value, as they were largely cumulative of the defendants' testimony as to their contents and the defendants' reliance on them. Flitcraft, 803 F.2d at 186. Furthermore, we stated that "the documents presented a danger of confusing the jury by suggesting that the law is unsettled and that it should resolve such doubtful questions of law." Id.

In Barnett, 945 F.2d at 1301, we once again addressed the problem confronting a district court called upon to engage in "the delicate balancing required by Rule 403" when determining the admissibility of evidence to support a defendant's good-faith beliefs in a tax evasion case. We noted "the need to allow the defendant to establish his beliefs through reference to tax law

-31-

sources and the need to avoid unnecessarily confusing the jury as to the actual state of the law." Id. Relying on Flitcraft, we determined that the district court did not abuse its discretion in excluding documentary evidence because the district court had allowed the defendant to explain his understanding of the documents while excluding the documents themselves to avoid unnecessarily confusing the jury. Id. Thus, as in Flitcraft and Barnett, we conclude that the district court in the present case did not abuse its discretion in making the evidentiary rulings of which Simkanin complains.[14]

With respect to the more specific evidentiary errors alleged by Simkanin, we similarly conclude that the district court did not abuse its discretion. Simkanin claims that the district court erred by admitting a document entitled "Proclamation of Warning," which Simkanin had posted on his website. In summary, the document declared that Simkanin is a servant of God and that public officials should be warned not to harm him or his household, lest they wish to enter "into a state of war against Almighty God" and to suffer "the fury of a fire which will consume [them]." The government responds that Simkanin opened the door to this evidence when defense counsel questioned

---

[14]     Simkanin avers that the district court's evidentiary rulings were not evenhanded because it permitted the government to introduce § 3402 as proof that Simkanin had been shown, and therefore actually was aware of, the correct law concerning withholding. However, we do not find this disparity dispositive because the admission of § 3402 did not raise the possibility of confusing the jury in the same manner as the defense exhibits.

Simkanin about how his religious beliefs told him not to withhold taxes from the paychecks of his employees. When defense counsel requested that he be able to question Simkanin on his religious beliefs, the government replied that it would open the door to the admission of the Proclamation. The district court acknowledged that it probably would, but it allowed defense counsel the option to proceed with the testimony on Simkanin's religious views. Simkanin testified that the Bible told him that God is entitled to the first fruits of a person's labor and that if he withheld taxes from his employees, then he was stealing the first fruits of their labor. It is not clear why defense counsel introduced Simkanin's own testimony on this issue because his statements that the tax laws contradicted his religious views were irrelevant to his good-faith defense under <u>Cheek</u>. It is perhaps less clear what probative value the Proclamation had on the relevant issues, but defense counsel was warned that testimony concerning Simkanin's religious views about the tax laws might open the door to other evidence concerning his religious views. In any event, even if the district court did abuse its discretion in admitting the Proclamation, we are convinced that it was harmless in the overall scheme of the trial. At most, the Proclamation showed that Simkanin held certain beliefs, which would tend to support his good-faith defense rather than refute it.

Next, Simkanin complains that the district court erred by

admitting IRS press releases warning taxpayers about various "scams" and "schemes" (including employers who claim that they need not withhold taxes). However, we do not agree that the potentially prejudicial nature of the documents outweighed the probative value of these documents, which showed that Simkanin had been explicitly warned about the illegality of his activities. Thus, the district court did not abuse its discretion.

Simkanin also argues that, in an in limine ruling, the district court unfairly restrained defense counsel from introducing any documentary evidence without first approaching the bench. The government responds that the district court's ruling was justified by the nature of the documents on the defense exhibit list, which included the Communist Manifesto, multiple versions of the Bible, and various publications translating Greek and Hebrew. We agree with the government that the district court did not abuse its discretion given this exhibit list. Moreover, the documents actually excluded on the basis of the in limine ruling would have been properly excluded under Rule 403 for the reasons stated above (i.e., they were cumulative and potentially confusing).

Next, Simkanin claims that the district court unfairly restricted the cross-examination of government witnesses, such as IRS agents Cooper and Eastman. The district court prohibited certain questions by defense counsel because the questions were

-34-

beyond the scope of direct and because, in the court's opinion, the questions attempted to show that the IRS agent's views of the law were incorrect and that Simkanin's views were actually correct. Simkanin argues that defense counsel's questions merely attempted to demonstrate the reasonableness of Simkanin's beliefs. Citing Olden v. Kentucky, 488 U.S. 227 (1988) (per curiam), Simkanin claims that these rulings violated the Confrontation Clause of the Sixth Amendment. However, the district court did not abuse its discretion in determining that the questions were beyond the scope of direct, see FED. R. EVID. 611(b), and Simkanin was free to recall the witnesses during his presentation of evidence, although he did not attempt to do so. Thus, his Confrontation Clause rights were not implicated. Moreover, the district court did not abuse its discretion because Simkanin was permitted to testify (and present the testimony of other witnesses) about his beliefs and because this line of questioning may have served to confuse the jury unnecessarily.

**D. Upward Departure**

With respect to his sentence, Simkanin argues that the district court erred by upwardly departing from the sentencing range established by the Guidelines. Prior to the upward departure, the sentencing range established by the Guidelines was forty-one to fifty-one months imprisonment (for a criminal history category of I and an offense level of Twenty-Two). Simkanin does not contend that the district court erred in

-35-

calculating this range.  However, the district court decided to depart upwardly, and it imposed a sentence of eighty-four months imprisonment.  At the sentencing hearing, the district court stated that U.S.S.G. § 5K2.0(a)(2)(B)[15] justified an upward departure because: (1) Simkanin "has displayed contempt and disrespect for the laws of the United States of America, the State of Texas, and the city of Bedford," and he has further confirmed that contempt in his conduct since his bail was revoked; (2) he and those who share his views have a cult-like belief that the laws of the United States do not apply to them; (3) Simkanin has entrenched himself in anti-government groups and is part of a movement whose members question the power of the federal government and its instrumentalities, including the federal courts, to exercise jurisdiction and authority over them; (4) his beliefs have led him to act in a manner inconsistent with the laws of the United States (ranging from giving up his

---

[15]    U.S.S.G. § 5K2.0(a)(2)(B) (2003) provides:

(a) Upward Departures in General and Downward Departures in Criminal Cases Other Than Child Crimes and Sexual Offenses. . . .
        (2) Departures Based on Circumstances of a Kind not Adequately Taken into Consideration. . . .
                (B) Unidentified Circumstances.--A departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence.

driver's license, threatening to kill federal judges,[16] and failure to comply with the federal tax laws); and (5) the court was satisfied that Simkanin would continue to act on those beliefs in the future. In addition, the district court stated that U.S.S.G. § 4A1.3(a)(1)[17] further justified the departure because, despite Simkanin's lack of a prior criminal record, "based on defendant's radical beliefs relative to the laws of the United States, it is likely that he will commit future tax-related crimes."

The district court explained that in determining the extent of the departure in accordance with U.S.S.G. § 4A1.3(a)(4),[18] the court used "as a reference, the criminal history category

---

[16] A person present at a meeting at Simkanin's place of business reported that Simkanin stated "I think we need to knock off a couple of federal judges. That will get their attention."

[17] U.S.S.G. § 4A1.3(a)(1) provides:

(a) Upward Departures.--
    (1) Standard for Upward Departure.--If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted.

[18] U.S.S.G. § 4A1.3(a)(4) provides:

(4) Determination of Extent of Upward Departure.--
    (A) In General.--Except as provided in subdivision (B), the court shall determine the extent of a departure under this subsection by using, as a reference, the criminal history category applicable to defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant's.

applicable to defendants whose likelihood to recidivate most closely resembles that of the defendant's." The court concluded that, for the reasons already discussed, Simkanin's likelihood to recidivate most closely resembles that of defendants whose criminal history category is VI. This produced a total offense level of Twenty-Two and a criminal history category of VI, resulting in a sentencing range of 84-105 months. The district court then sentenced at the bottom of that range and imposed an eighty-four month sentence.

Simkanin argues that the district court erred in imposing an upward departure on the grounds articulated at the sentencing hearing because: (1) it did not include a written statement of reasons in the judgment as required by 18 U.S.C. § 3553(c)(2);[19] (2) the district court impermissibly based its departure on grounds involving Simkanin's associations and beliefs, in violation of the First Amendment; and (3) the district court's belief that Simkanin posed a danger of recidivism was not supported by evidence.

_____

[19]    Section 3553(c) provides:

(c) Statement of reasons for imposing a sentence.--The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence--
    (2) is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in the written order of judgment and commitment . . . .

-38-

We recently discussed the appropriate standard of review to employ when reviewing a district court's decision to depart upwardly from the sentencing range established by the Guidelines. See United States v. Smith, --- F.3d ----, 2005 WL 1663784, *4-6 (5th Cir. July 18, 2005). There, we explained that the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005), directed us to return essentially to the abuse-of-discretion standard employed prior to 2003:

> Prior to 2003, our review of departure decisions was for abuse of discretion, pursuant to § 3742(e). In April 2003, Congress amended § 3742(e), altering our standard of review with respect to the departure decision to de novo. Under this scheme, while the decision to depart was reviewed de novo, the degree of departure was still reviewed for abuse of discretion. Then, in January 2005, the Supreme Court in Booker excised § 3742(e), leaving the appellate courts to review sentences for reasonableness. The Court explained that it was essentially returning to the standard of review provided by the pre-2003 text, which directs us to determine whether the sentence is unreasonable with regard to § 3553(a). Section 3553(a) remains in effect, and its factors guide us in determining whether a sentence is unreasonable.

Smith, 2005 WL 1663784 at *4 (footnotes and internal quotation marks omitted);[20] see also id. at *4 n.24; United States v.

---

[20]    As the Smith court noted, 18 U.S.C. 3553(a) states:

(a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed--
        (A) to reflect the seriousness of the offense,

-39-

Harris, 293 F.3d 863, 871 (5th Cir. 2002).[21]  Applying this standard, we conclude that Simkanin is not entitled to resentencing.

<div style="margin-left: 2em;">

to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;
(5) any pertinent [sentencing guidelines] policy statement ... [;]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

</div>

[21]    In Harris, 293 F.3d at 871, the court stated:

We review a district court's departure from the range established by the Guidelines for abuse of discretion. The district court's decision is accorded substantial deference because it is a fact intensive assessment and the district court's findings of fact are reviewed for clear error.  However, the district court's interpretation of the Guidelines is a question of law, reviewed de novo; a district court abuses its discretion by definition when it makes an error of law.  Determining whether a factor is permissible to take into account when considering a departure is one of these questions of law. A district court abuses its discretion if it departs on the basis of legally unacceptable reasons or if the degree of the departure is unreasonable.

(internal citations omitted).

First, Simkanin argues that the district court did not include its written statement of reasons in its judgment of conviction and sentence as required by 18 U.S.C. § 3553(c)(2). We disagree. The judgment clearly states that the Statement of Reasons and personal information about the defendant are set forth in an attachment to the judgment. Although Simkanin argued in his principal brief that the district court never drafted a written statement of reasons, he concedes in his reply brief that the court did so and that the written statement is virtually identical to the oral reasons given by the district court at sentencing. He also concedes that, after he filed his initial brief, he received a copy of the written statement, which was in the sealed part of the appellate record, as is the common practice in this circuit, and was available to defense counsel. Thus, Simkanin's argument that the district court did not author and include in the record a written statement of reasons is wrong. Furthermore, we find no merit in Simkanin's unsupported argument in his supplemental brief that he is entitled to resentencing simply because the written reasons were attached to the judgment and referenced after the judge's signature, as opposed to appearing before the judge's signature.

Second, Simkanin argues that the district court erred because it upwardly departed on an impermissible basis--namely, because of his associations and beliefs. Given the particular facts of this case, however, his argument fails. In <u>Dawson v.</u>

Delaware, 503 U.S. 159 (1992), the Supreme Court held that it was constitutional error to admit a stipulation of the defendant's membership in a racist prison gang, The Aryan Brotherhood, as an aggravating factor for consideration in sentencing. Dawson, 503 U.S. at 164-67. The Court reasoned that the defendant's membership had no relevance whatsoever to the crime in question, which was not racially motivated or otherwise connected to the beliefs of the gang, and it noted that the prosecution had introduced (via a stipulation) evidence establishing only that defendant was a member and that the gang held white supremacist views, not any evidence showing the gang's violent and unlawful tendencies. Id. The Court explicitly recognized, however, that consideration of a defendant's beliefs and associations might be appropriate in some instances in making sentencing decisions about the likelihood that the defendant will engage in future criminal activity. Id. at 165-66. The Court stated that "the Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." Id. at 165. Moreover, the Court explained that "[i]n many cases, for example, associational evidence might serve a legitimate purpose in showing that a defendant represents a future danger to society[;] [a] defendant's membership in an organization that endorses the killing of any identifiable group, for example, might be relevant to a jury's inquiry into whether

-42-

the defendant will be dangerous in the future." Id. at 166.

Simkanin's beliefs and associations may be considered if they were "sufficiently related to the issues at sentencing." Boyle v. Johnson, 93 F.3d 180, 183-85 (5th Cir. 1996). Here, Simkanin's sentence was not increased merely because of his abstract beliefs or associations. Rather, Simkanin's specific beliefs that the tax laws are invalid and do not require him to withhold taxes or file returns (and his association with an organization that endorses the view that free persons are not required to pay income taxes on their wages) are directly related to the crimes in question and demonstrate a likelihood of recidivism.[22] Thus, the district court did not constitutionally err in considering these factors. See id. at 183-85; see also Fuller v. Johnson, 114 F.3d 491, 497-98 (5th Cir. 1997) (finding that the defendant's membership in a racist gang was properly considered in sentencing because it went to future dangerousness in light of the evidence showing the gang's violent

---

[22] This court reached a similar conclusion in an unpublished opinion, United States v. Tampico, 297 F.3d 396 (5th Cir. 2002) (per curiam) (unpublished), a child pornography case in which the court upheld an upward departure that was based in part on the defendant's membership in the North American Man Boy Love Association, which advocates sexual relationships between men and underage boys. The court concluded that the defendant's membership in the organization was relevant to sentencing because it may indicate the increased likelihood of recidivism. Tampico, 297 F.3d at 402-03. As Simkanin correctly points out, Tampico is not binding precedent. Nonetheless, its reasoning is persuasive in light of Dawson and Boyle.

tendencies).[23]

Simkanin also briefly argues that the district court's finding that he held "contempt and disrespect for the law" was not a proper basis for upward departure. Relying solely on United States v. Andrews, 390 F.3d 840, 847-48 (5th Cir. 2004), he claims that the appropriate action for the district court to take in response to such contempt is the denial of a downward adjustment for acceptance of responsibility. However, Andrews involved a district court's upward departure expressly based in part on the defendant's failure to take responsibility (i.e., his lack of paid restitution, attempts to blame others for his behavior, and insincerity in his proffered words of remorse). The district court in the present case did not base its upward departure on the defendant's lack of acceptance of responsibility, but rather on the likelihood that he would

---

[23] The other Supreme Court cases cited by Simkanin on the constitutional question are inapposite. See Wisconsin v. Mitchell, 508 U.S. 476, 485 (1993) (upholding a statute that increases punishment for crimes committed with a racially motivated intent); McDonald v. Smith, 472 U.S. 479 (1985) (holding that the First Amendment right to petition is no shield against liability for libel); Watts v. United States, 394 U.S.705 (1969) (per curiam) (holding that a statute prohibiting threats against the President did not constitutionally apply to criminalize the defendant's conditional and hyperbolic political comment); Noto v. United States, 367 U.S. 290, 297-98, 299-300 (1961) (addressing a conviction under the membership clause of the Smith Act and finding evidence insufficient to show a present advocacy of overthrow); R.A.V. v. Minnesota, 505 U.S. 377 (1992) (holding unconstitutional on First Amendment grounds a law criminalizing conduct such as placing a burning cross or Nazi swastika, which one knows to arouse anger, alarm, or resentment on the basis of race, religion, etc.).

recidivate.  <u>Andrews</u>, therefore, is inapposite.[24]

At oral argument, defense counsel contended that the district court erred because it departed upwardly on the basis of Simkanin's firmly held beliefs and that this reasoning contradicted the government's position, and the jury's finding, that Simkanin did not hold good-faith belief that he was not obligated to file income returns or withhold taxes from the paychecks of Arrow's employees.  However, as the government correctly responded, the district court's decision to depart upwardly did not contradict the jury's finding that Simkanin did not have a valid good-faith defense under <u>Cheek</u>.  As discussed above, Simkanin's avowed position was that he would not comply with the tax laws, and the reason for his position was that the tax laws were both inapplicable to him and invalid for a number of reasons beyond the boundaries of a legitimate good-faith defense under <u>Cheek</u>.  At sentencing, Simkanin made clear to the district court that he continued to hold these beliefs when he stated that he still "firmly believed" that the Bible, the Constitution, and the Declaration of Independence all agree that

---

[24]     Simkanin also challenges the district court's ability to predict the likelihood of recidivism, stating that even trained scientists cannot accurately make such predictions.  The Guidelines, however, clearly permit a district court to depart upwardly if it believes that reliable information suggests that the defendant's likelihood to recidivate is not adequately represented by the range established.  <u>See</u> U.S.S.G. § 4A1.3(a)(1).  Obviously, nothing in the Guidelines or our case law suggests that the district court must be able to predict recidivism with scientific certainty.

"the wages of a laborer are withheld through fraud." Thus, the district court was convinced that Simkanin's likelihood to recidivate was not adequately reflected by the Guidelines range, and it did not abuse its discretion in upwardly departing from that range.

Finally, Simkanin contends that the extent of the upward departure was unreasonable. The district court upwardly departed from a range of forty-one to fifty-one months imprisonment to impose a sentence of eighty-four months. Simkanin argues that the district court failed to articulate the reasons "why a sentence commensurate with a bypassed criminal history category was not selected." United States v. Lambert, 984 F.2d 658, 663 (5th Cir. 1993) (en banc). Simkanin is correct that the district court did not specifically state why it rejected each of the preceding criminal history categories. However, as the government correctly notes, this court does "not require the district court to go through a 'ritualistic exercise' where . . . it is evident from the stated grounds for departure why the bypassed criminal history categories were inadequate." United States v. Ashburn, 38 F.3d 803, 809 (5th Cir. 1994) (en banc) (quoting Lambert, 984 F.2d at 663). Simkanin correctly notes that it was clearer in Ashburn why the district court had decided that defendant's criminal history category did not adequately reflect his prior history--the district court in Ashburn noted that the defendant had committed a series of robberies for which

-46-

he was never convicted.  Id.  However, the district court in the present case explained that it was convinced that Simkanin's membership in a group with radical views rejecting the laws of the United States and his professed beliefs that he is not required to abide by the tax laws would lead him to commit other tax-related crimes.  Moreover, the mere fact that the upward departure nearly doubled the Guidelines range does not render it unreasonable.  See United States v. Daughenbaugh, 49 F.3d 171, 174-75 (5th Cir. 1995) (upholding departure from Guidelines range of fifty-seven to seventy-one months to a sentence of 240 months); Ashburn, 38 F.3d at 809 (upholding departure from range of sixty-three to seventy-eight months to sentence of 180 months).  Therefore, we are persuaded, guided by the factors in § 3553(a), that the sentence imposed was reasonable for the reasons given by the district court.

**E.  Booker Error**

Simkanin argues that he is entitled to resentencing under Booker.  He concedes that he did not object on relevant grounds in the district court and that our review is therefore for plain error.  See United States v. Mares, 402 F.3d 511, 520 (5th Cir. 2005).  The basis of Simkanin's Booker argument is that the district court erred by enhancing his sentence based on facts not admitted by the defendant nor found by the jury.  He claims that this court should focus solely on this alleged enhancement error without considering the effect of the Guidelines' mandatory

-47-

nature at the time that he was sentenced. This argument fails under Mares because the proper inquiry for Booker error under the plain-error test is whether "the result would have likely been different had the judge been sentencing under the Booker advisory regime rather than the pre-Booker mandatory regime."[25] Mares, 402 F.3d at 522. Simkanin clearly has not met his burden because he has pointed to nothing in the record suggesting that he would have received a lower sentence had he been sentenced under the post-Booker advisory Guidelines. His assertion that other defendants with similar records who have committed similar offenses have received shorter sentences does nothing to show that he was prejudiced by the district court's assumption that the Guidelines were mandatory. Furthermore, Simkanin's suggestion that we should simply disregard the Supreme Court's remedial majority in Booker, including its explicit instruction to apply its remedial interpretation of the Guidelines to all cases pending on direct appeal, is obviously unconvincing. See, e.g., Booker, 125 S. Ct. at 769; cf. United States v. Scroggins, 411 F.3d 572, 576-77 (5th Cir. 2005). Finally, because we conclude that Simkanin is not entitled to resentencing, we need not address his argument that the district court's sentencing

---

[25] Indeed, Simkanin explicitly recognizes that his position is foreclosed by Mares, and it is therefore unavailing. See Hogue v. Johnson, 131 F.3d 466, 491 (5th Cir. 1997) (noting that one panel of this circuit may not overturn another panel absent an intervening decision to the contrary by the Supreme Court or this court en banc).

-48-

options would be limited on remand.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Simkanin's conviction and sentence.