**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 28, 2011

Lyle W. Cayce
Clerk

No. 10-60687
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

WILLIAM T. TACKER, II,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:09-CR-40-1

Before WIENER, GARZA, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant William T. Tacker, II, appeals his jury convictions for one count of aiding and abetting in defrauding the government, eight counts of aiding and abetting in making false statements to receive government funds, and one count of aiding and abetting in fraudulently receiving government funds. He contends that the district court erred in refusing to give a jury instruction concerning the testimony of a codefendant, Max Speight. The issue of the weight to be given to a codefendant's testimony who has pled guilty under

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

a plea agreement was substantially covered by the actual instruction given by the district court. *See United States v. Simkanin*, 420 F.3d 397, 410 (5th Cir. 2005). The district court did not abuse its discretion because the instruction given fairly and adequately covered the issue presented in this case, that the testimony of an accomplice should be viewed "with caution and weighed with great care." *See id.*

According to Tacker, the district court abused its discretion in admitting Speight's testimony concerning a conversation that he had with Susan Williams, Tacker's girlfriend, because it was hearsay. The district court did not abuse its discretion in admitting this testimony for the limited purpose of providing a context for a subsequent conversation between Speight and Tacker, and the court so instructed the jury. Juries are presumed to have followed the instructions. *See United States v. Reedy*, 304 F.3d 358, 368 (5th Cir. 2002). The testimony regarding Tacker's statement to Williams was not hearsay because it was an admission by a party opponent. *See* FED. R. EVID. 801(d)(2)(A); *see also United States v. Thompson*, 130 F.3d 676, 683 n.7 (5th Cir. 1997). As Tacker does not challenge the admission of Speight's testimony regarding his subsequent conversation with Tacker, he has abandoned this issue on appeal. *See United States v. Davis*, 603 F.3d 303, 308 n.5 (5th Cir. 2010). Moreover, Tacker's statement to Speight was admissible as an admission by a party opponent. *See* FED. R. EVID. 801(d)(2)(A); *see also Thompson*, 130 F.3d at 683 n.7.

Tacker contends that the evidence was insufficient to support his convictions because the only evidence against him was Speight's testimony, and Speight was not a credible witness. Because he moved for a judgment of acquittal at the close of the government's case without presenting any evidence, Tacker preserved his challenge to the sufficiency of the evidence. *United States v. Resio-Trejo*, 45 F.3d 907, 911 n. 6 (5th Cir. 1995).

No. 10-60687

Viewing the evidence in the light most favorable to the government, a rational trier of fact could have found that the evidence established beyond a reasonable doubt that Tacker was guilty of all of the offenses. *United States v. Villarreal*, 324 F.3d 319, 322 (5th Cir. 2003). Credibility determinations are "within the exclusive province of the jury." *United States v. Johnson*, 381 F.3d 506, 508 (5th Cir. 2004). Tacker was the president and majority owner of Biodiesel; he worked every day at Biodiesel's Mississippi plant; and he knew that Biodiesel was purchasing little soybean oil and producing little if any biodiesel fuel during the relevant time. Speight testified that he signed and submitted on behalf of Biodiesel five quarterly claims forms and received payments of approximately $3 million dollars; some of these funds were ultimately transferred to Tacker; these payments were the sole income of Biodiesel for the relevant time period; and Tacker knew of and approved of this scheme. Inasmuch as Tacker knew that Biodiesel was not producing any biodiesel fuel and the funds received from the USDA were the only income of Biodiesel during the relevant time period, it is reasonable to infer that Tacker must have known that the funds which Biodiesel was receiving from the USDA were obtained through fraudulent applications. *See United States v. Percel*, 553 F.3d 903, 910 (5th Cir. 2008). Further, Tacker did not respond or make any inquiries concerning letters from the United States Department of Agriculture (USDA) questioning the biodiesel claims and threatening to seek a refund for the payments made to Biodiesel. Speight's testimony was also corroborated by other witnesses. Paul Callahan, Jim Crowley, and Traci Plaxico confirmed that Biodiesel bought limited amounts of soybean oil during this period. Plaxico also confirmed that Biodiesel did not actually make any biodiesel fuel during this period. Plaxico and Alan Kennedy, a special agent with the USDA, testified that Tacker received some of the funds paid to Biodiesel by the USDA. A rational trier of fact could have found that this evidence established beyond a reasonable

doubt that Tacker was guilty of all of the offenses.  *See Villarreal*, 324 F.3d at 322.

      AFFIRMED.