**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gary W. BARNETT, Defendant–**
**Appellant.**

**No. 90–4951**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Sept. 20, 1991.

---

**1298**

Michael Hatchell, Tyler, Tex. (court-appointed), for defendant-appellant.

Bob Wortham, U.S. Atty., Tyler, Tex., Robert E. Lindsay, Chief, Yoel Tobin, Alan Hechtokopf, Attys., Criminal Appeals & Tax Enforcement, Tax Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before GARWOOD, HIGGINBOTHAM and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Gary W. Barnett (Barnett) appeals his conviction, following a jury trial, of three counts of willful failure to file individual federal income tax returns for the years 1983–85 in violation of the Internal Revenue Code (IRC) 26 U.S.C. § 7203. Barnett in this appeal challenges various aspects of the district court's jury instructions and certain of its evidentiary rulings. Concluding that Barnett's contentions on appeal present no reversible error, we accordingly affirm.

Barnett is a tax protestor who claims he was not required to file federal income tax returns because (i) wages are not income under the tax laws and he therefore did not earn "income" above the statutory minimum triggering the filing requirement and (ii) filing a tax return is voluntary and the Internal Revenue Service (IRS) will file a return on behalf of any taxpayer who chooses not to file.

I. The Jury Instructions

A. *Instructions Regarding the Subjective Standard*

The Supreme Court has repeatedly held that the defendant charged with willful failure to file a tax return must have willfully failed to file *knowing* that he had a legal duty to do so. *Cheek v. United States,* — U.S. —, 111 S.Ct. 604, 112 L.Ed.2d 617 (1990); *United States v. Pomponio,* 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976); *United States v. Bishop,* 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973).

■ A defendant charged with willful failure to file a tax return is therefore entitled to instructions that adequately inform the jury that the defendant is not guilty if he holds the mistaken, but good faith, belief that he is not required to file a tax return (at least assuming, as is the case here, that such is raised by the evidence). *Cheek, supra; United States v. Burton,* 737 F.2d 439 (5th Cir.1984). The instructions must make clear that the legal standard for the defendant's mistaken belief is a subjective, rather than an objective or "reasonableness," standard. *Id.*

■ Barnett challenges the jury instructions relating to his claim of good faith mistaken belief. A challenged jury instruction must be assessed in light of the entire jury charge. *United States v. Eargle,* 921 F.2d 56, 57 (5th Cir.1991). The relevant instructions in this case are therefore set forth in full as follows:

"You are instructed that, while a good faith disagreement with the law is not a defense, a good faith misunderstanding of it is. Thus, if the defendant honestly held a mistaken view of what the law requires in relation to the filing of income tax returns by persons in his category, he did not act willfully in failing to file the returns in question; but if his purported misunderstanding of the law was not in good faith, then he may be found to have acted willfully. The grounds on which the defendant bases his individual claim of good faith in a belief that his conduct was lawful may be considered by the jury in deciding whether he actually acted in good faith.

"Defendant asserts that he did not have the requisite intent to violate the law, because he had a good faith misunderstanding of his obligation to file. Whether or not defendant had such a good faith misunderstanding is a question of fact to be resolved by you as the

finders of the facts. However, you are instructed that a disagreement with the law, or a belief that the law is unconstitutional, does not constitute a good faith misunderstanding. It is the duty of all citizens to obey the law whether they agree with it or not.

" . . . .

"To prove the requisite intent, the government must show that the defendant intended not to file income tax returns which he knew he was required to file, at the time when he was required to file them.

"The question of intent is a matter for you, as jurors, to determine. Intent is a state of mind. It is not possible to look into a person's mind to see what went on at a given time in the past. The finder of fact in a case such as this must take into consideration all of the facts and circumstances shown by the evidence, including the exhibits, and determine from all such facts and circumstances whether it was the intent of the defendant at the time in question to fail to file his income tax returns.

"Intent may be inferred from acts; and inferences may be drawn from a combination of acts, although each act standing alone may seem unimportant. Thus, intent is a question of fact to be determined from all the evidence.

" . . . .

"You are instructed if you find evidence of intent to fail to file in one year, you can consider this evidence of intent to fail to file in prior or subsequent years.

"In determining what the defendant's intent was, you may take into consideration any evidence you find of the concealment of facts by the defendant, if any."

Barnett specifically challenges the sentence in the first paragraph above which reads: "The grounds on which the defendant bases his individual claim of good faith in a belief that his conduct was lawful may be considered by the jury in deciding whether he actually acted in good faith." Barnett claims that this sentence either

misled or confused the jury into thinking that they were to apply an objective rather than a subjective standard.[1]

We find this argument to be without merit. As the Supreme Court said in *Cheek, supra,* "Of course, the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties imposed by the tax laws...." *Cheek,* 111 S.Ct. at 611–12. Thus, the Court, while requiring a subjective standard for such a mistaken belief, clearly anticipated and condoned the jury's consideration of the bases upon which the defendant claims to have held his subjective belief as properly relevant to the ultimate inquiry of whether the defendant *in fact* held such belief. The instruction challenged in this case does nothing more than articulate this standard.

In *United States v. Whiteside,* 810 F.2d 1306 (5th Cir.1987), the defendant challenged the following similar instruction: " 'But if a person acts without reasonable ground for belief that his conduct is lawful, it is for you to decide whether he acted in good faith or whether he willfully intended to fail to file a tax return.' " *Id.* at 1310–11. This Court upheld the similar instructions in *Whiteside,* including the above sentence. The corresponding sentence of which Barnett complains is, in fact, clearer than that in *Whiteside* since it removed the word "reasonable" entirely from the charge.

We conclude that Barnett's complaint of the instructions in this respect is without merit.

### B. The Statements of the Law

■ Barnett also challenges the trial court's instructions regarding a taxpayer's duty to file a return.

The first challenge in this respect relates to an instruction given during the trial but before the evidence closed. One of Barnett's asserted beliefs was that he did not have to file a tax return because the IRS

---

**1.** We assume that Barnett sufficiently raised this    contention by appropriate objection below.

would file one on his behalf and assess him any taxes owed. To advance this theory, defense counsel asked the government's summary IRS witness whether he was familiar with IRC section 6020(b) or any other provision in the IRC which provided that the IRS would file a tax return on behalf of a taxpayer. After a brief colloquy, the court stated that it would research and inform the jury on the correct state of the law.

Following cross and redirect examination of the IRS witness and a short recess, the defense called Barnett as its first witness. Before his testimony began, however, the court gave the following instruction to the jury:

"Before we begin with this testimony, members of the jury, I instruct you that in the case of *United States against Milliken,* a case decided by the Court of Appeals for the Fifth Circuit in 1979, it was held by that court that there is no merit to a defendant's claim of entitlement to an instruction that the Internal Revenue Service was under a duty pursuant to Title 26, United States Code, Section 6020(b)(1) to prepare his tax return. In other words, the Internal Revenue Service is under no duty under the law to prepare a taxpayer's tax return. That decision has not been overruled since then. It's still the law. All right. You may proceed."

Though Barnett does not challenge the legal accuracy of this instruction, he does complain that the instruction, made immediately before he was to testify as to his beliefs about the tax laws, undermined his testimony and implied to the jury that he had no reasonable grounds for his beliefs, thus insinuating the forbidden objective standard. We reject this contention.

The jury must know the law as it actually is respecting a taxpayer's duty to file before it can determine the guilt or innocence of the accused for failing to file as required. Defense counsel raised the inference that the IRS actually has some statutory duty to file returns for delinquent taxpayers such as might relieve those taxpayers from the duty to file themselves.

The court therefore needed to properly instruct the jury on the state of the law. The instructions as given neither undermined the defendant's testimony nor, particularly in light of the court's later good faith belief instructions, led the jury to apply an objective rather than subjective standard to Barnett's beliefs.

Barnett makes similar protestations regarding the instructions on the state of the law that immediately followed the good faith belief instructions given at the conclusion of the trial. Barnett charges that these instructions (which stated that the income tax laws are constitutional, and that wages are taxable income) undermined the preceding good faith belief instructions and again implied an objective standard. For essentially the same reasons, we reject this contention.

*C. Failure to Give Instruction as to Irrational or Unreasonable Misunderstanding*

Barnett finally argues that it was plain error for the district court to have failed to instruct the jury that Barnett's good faith belief could be based on "unreasonable" or "irrational" misunderstandings of the law. Barnett did not below request such an instruction using those (or similar) adjectives, nor was any objection made below to the court's failure to include it.

The general rule is that "the failure of the district court to afford an instruction to the jury cannot be complained of on appeal in the absence of request or objection by counsel in the trial court." *United States v. Jones,* 673 F.2d 115, 118 (5th Cir.), *cert. denied,* 459 U.S. 863, 103 S.Ct. 140, 74 L.Ed.2d 119 (1982); *see also* Fed.R.Crim.P. 30. Although Federal Rule of Criminal Procedure 52(b) permits reversal for plain errors affecting substantial rights that were not brought to the trial court's attention, "the failure to give an instruction in the absence of request for it may amount to plain error only in egregious instances...." *Jones,* 673 F.2d at 119. Barnett has made no such showing.

■ As discussed above, the district court adequately instructed the jury on the matters of mistake and of actual knowledge on Barnett's part of the legal duty to file as a requirement for conviction. There was no "plain error" as a result of the district court's failure to further elaborate.

## II. The Admissibility of Barnett's Documentary Evidence

Barnett also contends that the trial court erred in excluding from evidence several items of documentary evidence relating to taxation laws that he tendered.[2] He claims that such evidence would have bolstered the legitimacy of the claim that he sincerely believed that he did not have to file tax returns.

■ The law applicable to this issue was established in this Circuit in *United States v. Flitcraft*, 803 F.2d 184 (5th Cir.1986). *Flitcraft* recognized both the need to allow the defendant to establish his beliefs through reference to tax law sources and the need to avoid unnecessarily confusing the jury as to the actual state of the law. The *Flitcraft* court found the delicate balancing required by Rule 403 of the Federal Rules of Evidence to have been satisfied by excluding the documents themselves but allowing the defendant to testify as to their contents and effect in forming his beliefs. *Flitcraft*, 803 F.2d at 185–86.[3] In allowing such testimony, the documents themselves become cumulative and the potential for jury confusion is minimized.

Here, the trial court appropriately applied the *Flitcraft* standard. While not allowing the documents themselves to go to the jury, the court allowed Barnett, during his testimony, to make reference to these documents as the sources of his beliefs.[4]

■ Nor was there error, as Barnett claims, in the exclusion by the trial court of hearsay testimony regarding the content of several tax seminars that Barnett attended. At several times, Barnett began to testify as to what a lecturer had said in a seminar. The prosecution's hearsay objections to this

---

2. The documents were: (i) two volumes of the IRC; (ii) a copy of the United States Constitution; (iii) a copy of the Privacy Notice Act; (iv) a copy of the Black's Law Dictionary definition of "income"; (v) a copy of the Texas State Constitution; (vi) a book entitled *Are You Required;* (vii) a book entitled *How Anyone Can Stop Paying Income Taxes;* and (viii) an IRS publication entitled *Handbook For Special Agents.*

3. At one point in Barnett's testimony, the trial court may have gone farther than necessary in excluding Barnett's documentary evidence. The following exchange took place near the end of Barnett's testimony:

"DEFENSE COUNSEL: ... Did you ever check out independently any of the sources that you relied on? Did you ever go to—did you check these things out with any codes or statutes or anything else?

BARNETT: Yes. That's why I bought a set of Internal Revenue Code books and also a special agent's handbook, and on the front of it it tells you it's a voluntary assessment tax, that you can either voluntarily do it or not. That's on the front. Am I allowed to read the front of it?

THE COURT: No you are not...."

While the voluminous, "cover the waterfront" exhibits that Barnett originally offered into evidence posed a real danger of confusing the jury and inviting them to instruct themselves on the presently applicable law by their extraction of it from this undifferentiated mass of material, most of which was entirely irrelevant, nevertheless Barnett's limited and specific offer of one or two sentences from the IRS Special Agent's Handbook would not have posed the same threat. It would, however, have had some probative value in showing how Barnett came to his beliefs regarding the tax laws and the sincerity with which he held those beliefs. This limited item might arguably have been properly admitted into evidence. However, if the exclusion of this item were error, it is clear to us that it was harmless error and did not affect Barnett's substantial rights.

4. Barnett briefly mentions in his appellate brief that the district court should have allowed him to introduce attachments to a letter which had been introduced as a government exhibit. Barnett's counsel admitted that the attachments had only been discovered the previous day. The prosecutor objected because the letter did not contain any references to attachments. Other than mentioning this evidentiary exclusion, Barnett offers no further argument concerning these particular attachments.

To the extent that Barnett's previous argument is applicable, the district court did not abuse its discretion in refusing to admit the attachments. The attachments were no different in character from the other documents about which Barnett testified and which the district court properly excluded, based on the holding in *Flitcraft.*

testimony were sustained by the court; alternatively, the court instructed defense counsel that he could ask Barnett what was said at such seminars and offer it for the limited purpose of showing that such statements were made and the effect they had on Barnett's beliefs. Thus, Barnett's testimony was not, in fact, improperly limited at all.

### Conclusion

Barnett's appeal demonstrates no reversible error. His conviction is therefore

AFFIRMED.