T.C. Memo. 2007-35

UNITED STATES TAX COURT

ARTHUR W. & RITA C. MILLER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No.  24308-05L.            Filed February 8, 2007.

Arthur W. and Rita C. Miller, pro sese.

<u>Nancy C. Carver</u>, for respondent.

MEMORANDUM OPINION

CHIECHI, <u>Judge</u>:  This case is before the Court on respon-
dent's motion for summary judgment (respondent's motion).  We
shall grant respondent's motion.

<u>Background</u>

The record establishes and/or the parties do not dispute the
following.

Petitioners resided in Catonsville, Maryland, at the time they filed the petition in this case.

On or about April 15, 2001, petitioners jointly filed a Federal income tax (tax) return (tax return) for their taxable year 2000 (2000 return). Petitioners' 2000 return showed tax of $289,989, withholding credits of $18,634, estimated tax payments of $96,780, and tax due of $174,575. When petitioners filed their 2000 return, they paid only $1,000 of the tax due shown in that return.

On June 11, 2001, respondent assessed the tax of $289,989 shown in petitioners' 2000 return, an addition to tax under section 6651(a)(2)[1] of $1,735.75, and interest as provided by law. On August 27, 2001, respondent made another assessment of an addition to tax under section 6651(a)(2) of $2,734.02 and interest as provided by law with respect to petitioners' taxable year 2000.

On or about March 25, 2002, petitioners filed an amended tax return for their taxable year 2000 (petitioners' amended 2000 return). On May 6, 2002, respondent processed petitioners' amended 2000 return and abated tax for petitioners' taxable year 2000 in the amount of $47,764. (We shall refer to any unpaid assessed amounts with respect to petitioners' taxable year 2000,

[1]All section references are to the Internal Revenue Code in effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure.

as well as interest as provided by law accrued after August 27, 2001, as petitioners' unpaid 2000 liability.)

Respondent issued to petitioners the notice and demand for payment required by section 6303(a) with respect to petitioners' unpaid 2000 liability.

On or about August 13, 2002, petitioners jointly filed a tax return for their taxable year 2001 (2001 return). Petitioners' 2001 return showed tax of $84,001, withholding credits of $23,223, and tax due of $60,778. When petitioners filed their 2001 return, they did not pay the tax due shown in that return.

On September 9, 2002, respondent assessed the tax of $84,001 shown in petitioners' 2001 return, additions to tax under sections 6651(a)(2) and 6654 of $2,303.19 and $1,519.45, respectively, and interest as provided by law. (We shall refer to any unpaid assessed amounts with respect to petitioners' taxable year 2001, as well as interest as provided by law accrued after September 9, 2002, as petitioners' unpaid 2001 liability.)

Respondent issued to petitioners the notice and demand for payment required by section 6303(a) with respect to petitioners' unpaid 2001 liability.

On August 7, 2004, respondent sent to each petitioner a final notice of intent to levy and notice of your right to a hearing (notice of intent to levy) with respect to petitioners' taxable year 2000. On the same date, respondent sent to each

petitioner a notice of intent to levy with respect to petitioners' taxable year 2001.

Respondent received a signed receipt from each petitioner indicating that each petitioner received the notice of intent to levy with respect to petitioners' taxable year 2000 and the notice of intent to levy with respect to petitioners' taxable year 2001.

On September 14, 2004, in response to the respective notices of intent to levy with respect to petitioners' taxable years 2000 and 2001, petitioners filed an offer-in-compromise with respondent. Petitioners did not file Form 12153, Request for a Collection Due Process Hearing (Form 12153), with respondent in response to those respective notices. Nor did petitioners submit any other documents to respondent that could be construed as a request for a hearing with respondent's Appeals Office (Appeals Office) with respect to the respective notices of intent to levy relating to petitioners' taxable years 2000 and 2001.

On September 24, 2004, respondent rejected the offer-in-compromise filed by petitioners with respect to petitioners' taxable years 2000 and 2001.

On October 28, 2004, respondent filed a notice of Federal tax lien with respect to petitioners' taxable years 2000 and 2001.

On November 4, 2004, respondent issued to petitioners a

notice of Federal tax lien filing and your right to a hearing under IRC 6320 (notice of tax lien) with respect to petitioners' taxable years 2000 and 2001.

On December 2, 2004, in response to the notice of tax lien, petitioners filed Form 12153 (petitioners' Form 12153) and requested a hearing with the Appeals Office.  In petitioners' Form 12153, petitioners indicated that they did not agree with the notice of tax lien that respondent had filed with respect to petitioners' taxable years 2000 and 2001.  Petitioners attached a document to petitioners' Form 12153.  That attachment stated in pertinent part:

> The debt, which is represented herein, is unfair and inequitable.  Extenuating circumstances exist.  There is an equal amount owed to us by the IRS in the form of a credit that could satisfy this debt in full.  This credit in actuality represents an over assessment of taxes.
>
> Requiring payment up front in lieu of applying the credit against the debt creates a situation that would prevent us from ever recovering the credit (overpay-ment).  Also, since Mr. Miller is currently unemployed this lien seriously damages his credit and his ability to obtain suitable employment.  [Reproduced literally.]

On May 24, 2005, the settlement officer with the Appeals Office (settlement officer) assigned to consider petitioners' Form 12153 with respect to the notice of tax lien relating to petitioners' taxable years 2000 and 2001 held a telephonic conference (May 24, 2005 telephonic conference) with petitioners. During that telephonic conference, petitioners and the settlement

officer discussed the exercise by petitioners of certain incentive stock options (ISO) and the effect of the alternative minimum tax (AMT) on the tax consequences with respect to such exercise. During the May 24, 2005 conference, petitioners agreed that they owe the tax due shown in (1) petitioners' 2000 return as amended by petitioners' amended 2000 return and (2) their 2001 return. However, petitioners claimed at that conference that the AMT is unfair and that they are entitled to certain carryforward credits. During the May 24, 2005 telephonic conference, the settlement officer discussed collection alternatives with petitioners and concluded that they had the ability to pay in full from retirement and other assets petitioners' unpaid 2000 liability and petitioners' unpaid 2001 liability. During that conference, petitioners advised the settlement officer that they did not wish to submit another offer-in-compromise since respondent had rejected the one that they had previously submitted in response to the respective notices of intent to levy that they received with respect to their taxable years 2000 and 2001. Petitioners further indicated to the settlement officer during the May 24, 2005 telephonic conference that they did not wish to propose an installment agreement. The settlement officer told petitioners during that conference that she intended to research recent court cases addressing petitioners' claim that the AMT is unfair and that they are entitled to certain carryforward cred-

its.

After the May 24, 2005 telephonic conference, the settlement officer considered petitioners' claim to certain carryforward credits. As part of that consideration, the settlement officer learned that Congress was considering proposed legislation to address the ISO/AMT situation but had not enacted any law to deal with that situation. As part of the settlement officer's consideration of petitioners' claim to carryforward credits to their taxable years 2000 and 2001, she also reviewed the Court's opinion in Speltz v. Commissioner, 124 T.C. 165 (2005), affd. 454 F.3d 782 (8th Cir. 2006).

On August 23, 2005, the settlement officer held a face-to-face Appeals Office hearing with petitioners (August 23, 2005 hearing). At that hearing, petitioners and respondent discussed the proposed legislation pending in Congress that addressed the ISO/AMT situation. They exchanged views as to whether petitioners would be able to submit an offer-in-compromise to respondent in which they would claim certain carryforward credits as set forth in that proposed legislation and would request abatement for public policy reasons of the remainder of petitioners' unpaid 2000 liability and petitioners' unpaid 2001 liability. Petitioners also requested at the August 23, 2005 hearing that respondent abate the additions to tax and interest that respondent assessed with respect to their taxable years 2000 and 2001. The settle-

ment officer informed petitioners that respondent was charged with enforcing the law as it was written, and not as it was set forth in proposed legislation.

On or about October 20, 2005, the settlement officer who had been assigned to handle petitioners' taxable years 2000 and 2001 was transferred to a managerial position. As a result, another settlement officer with the Appeals Office (second settlement officer) was assigned to consider that matter.

The second settlement officer reviewed the administrative file relating to petitioners' taxable years 2000 and 2001 and sent petitioners a letter dated October 26, 2005 (second settlement officer's October 26, 2005 letter). The second settlement officer's October 26, 2005 letter stated in pertinent part:

> I have been reassigned your Collection Due Process (CDP) request regarding the filing of the Notice of Federal Tax Lien for the above referenced tax periods [2000 and 2001] * * *.

> I have thoroughly reviewed your file including all previous correspondences and administrative history records. I am well versed in the AMT/ISO issue as this is a widely debated issue now before Congress. I am also personally familiar with Mr. Timothy Carlson, his Coalition for Tax Fairness (CTF), and their proposed legislation before Congress (H.R. 3385) to enact retro-active changes to the application of AMT for the thou-sands of individuals in your current situation.

> However, as you have been previously advised, the IRS has taken the position that we will not consider or accept an Offer in Compromise under the provisions of Effective Tax Administration-Public Policy when the basis for the Offer is that the imposition of the tax law, specifically the AMT, is in and of itself unjust and inequitable. Our position has recently been upheld

in the widely publicized Speltz v. Commissioner case (of which Mr. Carlson and CTF were integrally involved); where the court determined that the IRS did not abuse its discretion in not accepting the Speltz's Offer in Compromise, further stating that it is not the IRS' purview to override tax laws when they appear inequitable.  The ability to modify, alter or eliminate tax laws rests solely with Congress.

By your own admission, you have sufficient resources to pay these outstanding liabilities, but feel that you should not be required to do so.  The IRS will not accept any Offer from you under these circumstances. The Offer program was established to provide relief to those taxpayers who could not fully pay their tax obligations.  It was also designed to provide relief to those taxpayers who could fully pay their taxes, but doing so would cause <u>significant</u> economic hardship. Neither of these situations has been demonstrated in your case.

Ms. Colbert has previously advised you that the Notice of Federal Tax Lien filing will be sustained, and I agree with that decision.  The tax was legally due and owing at the time the Lien was filed.  As all legal and procedural requirements were met, I believe that this action was proper.

Although Ms. Colbert indicated that she would consider possible abatements of penalties on your account, I do not agree with this.  You have been assessed the Failure to Pay penalty on both 2000 and 2001.  Because you have the ability to pay, but are refusing to do so at this time, I do not believe that you meet the criteria for relief of this penalty under Reasonable Cause.

For 2001, you have also been assessed the Estimated Tax Penalty.  You did not make any estimated tax payments as required by law due to your insufficient federal income tax withholding for the year.  You have provided no documentation to illustrate why you were unable to make the estimated payments, therefore I again do not believe that you meet the criteria for relief of this penalty under the Reasonable Cause provisions.

At this point, I believe that we are at an impasse with your account.  Appeals believes that you have the ability to fully pay your tax liabilities, but you have

expressed that you do not want to fulfill this obliga-
tion.  Because you have provided no other alternatives
on this account, our only action at this time is to
close your CDP request, sustaining the Lien filing, and
issuing the required Notice of Determination.

I will hold you account open for 10 days from the date
of this letter if you want to discuss any alternatives.
If I do not hear from you, and/or viable alternatives
are not presented for review, I will proceed with the
formal closure of your account.  [Reproduced liter-
ally.]

On November 5, 2005, petitioners sent a letter (November 5,

2005 letter) in response to the second settlement officer's

October 26, 2005 letter.  Petitioners' November 5, 2005 letter

stated in pertinent part:

We are seeking a settlement in good faith.  We would
like to clarify a few statements that were contained in
the letter dated 26 October 2005.  You noted, "By your
own admission, you have sufficient resources to pay
these outstanding liabilities, but feel that you should
not be required to do so".  We honestly stated up
front, that the only assets we had, and still only
have, is the home we live in, and our retirement ac-
count.  We don't have any bank accounts or stock or
hidden treasures.  We paid the IRS every available
dollar.  We liquidated everything except the house and
retirement to pay what we have so far.

The point that we are trying to convey is that it
wouldn't be fair to force us to take an irretrievable
action (selling our home) to pay tax on a phantom
liability.  You state that we did not demonstrate that
it would cause significant economic hardship.  We
believe that forcing us to sell the roof over our head
is an economic hardship.

We were assessed taxes on profits we didn't realize.
We were taxed on what you thought we would make in
profit when we sold the stock.  That never happened.
We paid taxes on income we didn't receive.

Nowhere in your letter do you mention our $124,000

credit that the IRS owes us.  The only way anyone can generate credits is if you overpay taxes.  It's like we are giving the government a tax-free loan.  The government gets to keep the full overpayment, we're forced to sell our home then we will be given back $3,000 per year.  My husband is 60 years old and I am 58 we will never in our lifetime get back all the overpaid taxes.

* * * We addressed our situation from day one with payments until we both lost our jobs.  We have been trying to work things out reasonably.  As subsequent tax years were filed a credit was generated.  Meaning that we overpaid our taxes.

We are not asking you to modify, alter or eliminate tax laws.  We are respectfully asking that realize that we have paid sufficient tax to cover our liability.  The only way to pay these phantom taxes is to sell our home.  If you ask us to sell our home and pay the taxes we will be overpaying our tax obligation.  We don't believe that Congress intended for this to happen.  This is really an accounting issue.  The credit generated should offset the tax liability.  [Reproduced literally.]

At no time during the consideration by the Appeals Office of petitioners' Form 12153 with respect to the notice of tax lien relating to their taxable years 2000 and 2001 did petitioners provide Form 433-A, Collection Information Statement for Individuals, or any other documentary evidence relating to their financial status or their financial situation at and after the respective times their 2000 return and 2001 return were filed.  Although collection alternatives were discussed at the Appeals Office's consideration of petitioners' Form 12153 with respect to the notice of tax lien relating to their taxable years 2000 and 2001, at no time during the Appeals Office consideration of that matter did petitioners submit an offer-in-compromise, installment

agreement, or other collection alternative.

On November 28, 2005, the Appeals officer issued to petitioners a notice of determination concerning collection action(s) under section 6320 and/or 6330 (notice of determination). The notice of determination stated in pertinent part: "The filing of the Notice of Federal Tax Lien is sustained by the Appeals office at this time." An attachment to the notice of determination stated in pertinent part:

| Type of Tax | Period | CDP Notice Date | CDP Received |
|---|---|---|---|
| 1040 | 12/31/2000, 12/31/2001 | 11/04/2004 | 12/2/2004 |

**SUMMARY AND RECOMMENDATION**

Appeals has verified, or received verification, that applicable laws and administrative procedures have been met, has considered all issues raised, and has balanced the proposed collection action with the legitimate concern that such action be no more intrusive than necessary as required by IRC §6330(c)(3).

The outstanding tax liabilities of the Miller's are the result of self-assessed returns in which credits from withholding and estimated tax payments were insufficient to cover the amount of Income Tax and Alternative Minimum Tax on each return. They are in full compliance for filing through tax year 2004, and have no other outstanding liabilities than the ones at issue under this Due Process request.

The administrative file indicates that the Miller's have previously submitted several Offers in Compromise, all of which have been denied, citing that they have the ability to pay their taxes in full via equity in assets and future income potentials. They have also been given the option of entering into an Installment Agreement to resolve these liabilities, but have chosen not to do so.

At the Appeals level, the Miller's participated in several teleconferences and a face-to-face conference, as well as exchanged numerous correspondences with this office.  At no time during Appeals consideration of this account did the Miller's present a viable alternative to resolve their outstanding taxes.  The issues raised by the Miller's were as follows:

1.  <u>They requested relief from penalties and interest</u>.  A review of the account transcripts indicates that they were assessed the Failure to Pay penalty for both years and the Estimated Tax Penalty for tax year 2001.  They did not however, provide any documentation to illustrate why they were unable to make sufficient estimated tax payments for 2001, or why they were now unable to satisfy these liabilities.  They simply requested to have the penalties and associated interest removed from their account because they felt that they should not have to pay them, as required by law.  They were advised that they did not meet the reasonable cause criteria to abate the penalties, and that there were no current IRS initiatives to waive penalty and interest assessments on those individuals owing AMT taxes.

2.  <u>They requested to have their future AMT credits offset to pay the current outstanding liabilities</u>.  They were advised that this is not legal under current tax law legislation, and that neither the office of Appeals, nor any other operating division within the IRS could negotiate such a settlement.

The Miller's raised no other pertinent issues other than to state that the application of the AMT was unfair and inequitable, and they should not be forced to pay taxes on this "phantom income".

The Miller's have never provided financial information to Appeals as requested.  By their own admission, they have the resources to pay these taxes, but feel that it would be unfair to make them use their equity in assets, primarily their residence and a retirement account, to satisfy these debts.

As no viable options have been presented for consideration, further Appeals consideration of this account is not warranted.

The filing of the Notice of Federal Tax Lien is sustained by the Appeals office at this time.  [Reproduced literally.]

In the petition that petitioners filed commencing the instant case, petitioners alleged:

We respectfully request the release of the lien applied against us and the abatement of the associated penalty and interest.  Sufficient taxes have been paid to cover our tax debt which is evidenced by the AMT credit due us for $120,868 that the IRS currently holds.

## Discussion

The Court may grant summary judgment where there is no genuine issue of material fact and a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

Petitioners filed a response (petitioners' response) to respondent's motion in which they oppose the granting of that motion.  According to petitioners,

The significant issue of material fact which is not conceded is that the Collection Due Process hearing should have considered the penalty assessment. * * * the penalty waiver is justified because the estimated tax penalties and failure to pay penalties were generated as a result of faulty tax advice.

    * * * Petitioners raised the issue of propriety of assessment of the penalties at the CDP hearing.  It was an abuse of discretion for the CDP officer to decline to consider the penalty waiver request.  The case of Bell, 126 T.C. No. 18 (2006) cited by Respondent is applicable because it references challenge to the entire tax liability.  A penalty abatement request may

be processed by the Service at any time and is in that
respect materially different from a challenge to the
underlying tax liability

  * * * the burden of proof for purpose of challeng-
ing the penalty in the CDP hearing is not merely abuse
of discretion.  The CDP officer should have developed
the penalty waiver request.

  * * * the penalty may be waived in a situation
where a taxpayer fails to properly report and pay the
alternative minimum tax if the taxpayer relied on
professionals, as was the case here.  Montgomery, 127
T.C. No. 3 (2006).

  * * * The tax and interest assessments are not at
issue in this case.  [Reproduced literally.]

We conclude that there are no genuine issues of material

fact regarding the questions raised in respondent's motion.  In

that motion and the declaration and the exhibits attached

thereto, respondent has represented facts relating to the resolu-

tion of respondent's motion, none of which petitioners dispute,

including the facts surrounding the mailing and the receipt by

each petitioner of a final notice of intent to levy with respect

to each of petitioners' taxable years 2000 and 2001.  Petitioners

do not dispute that respondent mailed such notices, that peti-

tioners received such notices, and that petitioners failed to

request an Appeals Office hearing in response to such notices.

Petitioners had an opportunity to challenge the respective

underlying tax liabilities for their taxable years 2000 and 2001

when each petitioner received a notice of intent to levy with

respect to each of those years.[2]  In response to such notices, petitioners declined to request an Appeals Office hearing. Instead, they decided to file an offer-in-compromise with respondent.

Nonetheless, during the consideration by the Appeals Office of petitioners' notice of tax lien with respect to petitioners' taxable years 2000 and 2001, the settlement officer and the second settlement officer, although not required to do so, considered whether to abate the additions to tax under sections 6651(a)(2) and 6654 that respondent assessed with respect to petitioners' taxable year 2000 and/or their taxable year 2001. As reflected in the attachment to the notice of determination upon which this case is based, the second settlement officer concluded that petitioners had failed to establish reasonable cause to abate such additions to tax.

An Appeals officer may, within such officer's sole discretion, consider issues that are precluded from consideration under section 6330(c)(2)(B).  However, consideration of any such

---

[2]We reject petitioners' position that "A penalty abatement request * * * is in that respect materially different from a challenge to the underlying tax liability."  The Court has held that the phrase "underlying tax liability" in sec. 6330(c)(2)(B) is "a reference to the amounts that the Commissioner assessed for a particular tax period."  Montgomery v. Commissioner, 122 T.C. 1, 7 (2004).  What the Court concluded in Montgomery applies in the instant case:  "petitioners' underlying tax liability consists of the amount that petitioners reported due on their tax return along with statutory interest and penalties."  Id. at 8.

precluded issues does not allow the Court to consider such issues in a case filed in response to a notice of determination. Behling v. Commissioner, 118 T.C. 572, 578 (2002); sec. 301.6320-1(e)(3), Q&A-E11, Proced. & Admin. Regs.

A taxpayer may raise challenges to the existence or the amount of the taxpayer's underlying tax liability if the taxpayer did not receive a notice of deficiency or did not otherwise have an opportunity to dispute the tax liability, sec. 6330(c)(2)(B), including the tax liability reported in the return that such taxpayer filed, Montgomery v. Commissioner, 122 T.C. 1 (2004). In the instant case, although petitioners did not receive a notice of deficiency, they had the opportunity after they received the notices of intent to levy to dispute the additions to tax under sections 6651(a)(2) and 6654 that respondent assessed. They failed to do so. On the instant record, we find that petitioners may not challenge the existence or the amount of the underlying tax liability for each of their taxable years 2000 and 2001, including any additions to tax, that respondent assessed.

Where the validity of the underlying tax liability is not properly placed at issue, the Court will review the determinations of the Commissioner of the Internal Revenue for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

Based upon our examination of the record before us, we find that respondent did not abuse respondent's discretion in making the determinations in the notice of determination with respect to petitioners' taxable years 2000 and 2001.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

On the record before us, we shall grant respondent's motion.

To reflect the foregoing,

An order granting respondent's motion and decision for respondent will be entered.