T.C. Memo. 2010-36

UNITED STATES TAX COURT

PERRY B. AND GLADYS M. WESTCOTT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22690-07L.               Filed February 23, 2010.

Perry B. Westcott and Gladys M. Westcott, pro se.

<u>Marty J. Dama</u>, for respondent.

MEMORANDUM OPINION

MORRISON, <u>Judge</u>:  This case arises from a petition filed by
Perry and Gladys Westcott in response to the IRS's "Notice of
Determination Concerning Collection Actions(s) Under Section 6320

and/or Section 6330."[1]  We decide that the IRS did not abuse its discretion in making the determinations reflected in the notice.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated in this opinion by this reference.  At the time they filed the petition, the Westcotts resided in Texas.

## I.   Levy Proceeding

The Westcotts jointly filed their 1998 income tax return on July 2, 2001.  The return had a blank for the Westcotts to fill in their tax liability and a blank for the amounts they had already paid towards that liability, but the record does not reveal how the Westcotts reported these amounts on their 1998 return.  On the return, the Westcotts reported that they owed $46,721.87, i.e., $46,721.87 was their tax liability minus the amounts they had already paid.  The Westcotts did not pay the $46,721.87 owed.  They used the money with which they could have paid the amount owed to buy a business.  On March 4, 2002, the IRS assessed the tax liability shown on the 1998 return, assessed some penalties (the nature of which was not disclosed by the record), and assessed underpayment interest.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code), and all Rule references are to the Tax Court Rules of Practice and Procedure.

On August 17, 2002, the IRS sent the Westcotts a "Final Notice of Intent to Levy and a Notice of Your Right to a Hearing." On August 20, 2002, Mr. Westcott alone filed Form 12153, "Request for a Collection Due Process Hearing," in which he claimed that "Taxes owed from 1998 are offset by losses in 1999 & 2000. Cannot find anyone, including IRS, to complete tax return & we cannot do it ourselves & cannot afford CPA." The Westcotts subsequently filed their 1999 return. The exact date that the 1999 return was filed is not revealed by the record-- except that the date was before February 24, 2003. The return showed a business loss of $82,592 (reported on Schedule C, Profit or Loss From Business), gross income of negative $80,090, and adjusted gross income of negative $80,090. By letter dated February 24, 2003, the Appeals officer notified Mr. Westcott that the IRS had accepted the 1999 return and that he had accordingly reduced the Westcotts' unpaid 1998 tax liability to "approximately" $29,000 by carrying back the 1999 business loss as a net operating loss.[2] He warned Mr. Westcott that he could not entertain any collection alternatives (i.e., alternatives to levying) because the Westcotts had not filed their 2000 and 2001

---

[2]The Code generally permits a net operating loss to be carried back to each of the 2 years preceding the year of the loss and then carried forward to each of the 20 years following the loss year. Sec. 172(a) and (b)(1)(A).

returns.[3]  The Appeals officer referred them to low-income tax preparation services in their area to assist them in preparing their unfiled returns.  But on March 7, 2003, he issued a notice of determination to Mr. Westcott for the 1998 taxable year sustaining the proposed levy.  The notice acknowledged that only the reduced 1998 tax liability of "about" $29,000 would be subject to levy.

In June 2005, more than 2 years after the issuance of the notice of determination, the Westcotts filed an income-tax return for the 2000 tax year.  They reported a business loss of $36,514 on Schedule C, negative $17,299 of total gross income, and negative $17,299 of adjusted gross income.  Sometime after March 7, 2003, the Westcotts filed income-tax returns for the tax years 2001 through 2004.

Mr. Westcott alone filed a petition with the Tax Court challenging the IRS's 2003 notice of determination regarding the levy for the 1998 tax year.  The Court issued a Memorandum Opinion on November 9, 2006.  See Westcott v. Commissioner, T.C. Memo. 2006-245.  The Court held that Mr. Westcott did not introduce "any reliable evidence" to substantiate the 2000 loss. Thus the Court did not reduce his unpaid 1998 tax liability by

---

[3]The regulations support the Appeals officer's statement: "the IRS does not consider offers to compromise from taxpayers who have not filed required returns".  Sec. 301.6330-1(d)(2), Q&A-D8, Proced. & Admin. Regs.

carrying back the 2000 loss to the 1998 year.  The Court also rejected two arguments Mr. Westcott advanced in support of his position that the Court should have invalidated the notice of determination because the IRS failed to assist him in preparing his 2000 tax return.  Mr. Westcott's first argument was, in the words of the Court, that "section 6404(d) relating to the abatement of tax implicitly required the IRS to prepare, or to assist him in preparing, his tax return for his taxable year 2000."[4]  Id.  The Court responded:

> Neither section 6404(d) nor any other provision in the Internal Revenue Code requires the IRS to prepare, or to assist in the preparation of, a tax return for any taxpayer.  See United States v. Barnett, 945 F.2d 1296, 1300 (5th Cir. 1991).  We reject petitioner's argument that the IRS had a legal duty to prepare, or to assist him in preparing, a tax return for his taxable year 2000 (or any other taxable year).

Id.  Second, Mr. Westcott argued that the IRS violated his equal protection rights by failing to assist him in preparing his Form

---

[4]Sec. 6404(d) provides:

> SEC. 6404(d).  Assessments Attributable to Certain Mathematical Errors by Internal Revenue Service.--In the case of an assessment of any tax imposed by chapter 1 attributable in whole or in part to a mathematical error described in section 6213(g)(2)(A), if the return was prepared by an officer or employee of the Internal Revenue Service acting in his official capacity to provide assistance to taxpayers in the preparation of income tax returns, the Secretary is authorized to abate the assessment of all or any part of any interest on such deficiency for any period ending on or before the 30th day following the date of notice and demand by the Secretary for payment of the deficiency.

1040 (the income tax return for individuals) and Schedule C for the 2000 tax year.  The Court held that Mr. Westcott did not meet his burden of establishing that the IRS's failure to assist him was premised on an impermissible basis such as race, religion, or a desire to prevent the exercise of his constitutional rights. Westcott v. Commissioner, supra.  The Court therefore sustained the notice of determination.

II.  Lien Proceeding

On March 23, 2007, the IRS filed a notice of tax lien against the Westcotts in the amount of $22,589.28 for their unpaid 1998 tax liability.[5]  On April 3, 2007, ths IRS mailed to the Westcotts a "Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320."  On April 15, 2007, the IRS timely received Form 12153, "Request for a Collection Due Process Hearing," from both Mr. and Mrs. Westcott.  The Appeals officer held a hearing with Mr. Westcott on August 16, 2007.  At the hearing, Mr. Westcott requested an abatement of tax and penalties for the 1998 tax year because the IRS would not help him prepare the couple's tax returns for the taxable years 1998 through 2000.

---

[5]It is unclear from the record how much of the $22,589.28 outstanding is attributable to tax due on the 1998 return, the failure-to-pay penalty indicated in the record, and/or underpayment interest.  It is also unclear from the record why the amount in the notice of tax lien is less than the approximately $29,000 the Appeals officer determined was the Westcotts' 1998 tax liability after carrying back their 1999 net loss.

In the words of the Appeals officer, Mr. Westcott felt "he could never find anyone to help him file his returns and therefore should not be penalized for the length of time it took to file his returns." He asserted that section 6020(a) required the IRS to assist him in preparing his return. But he said that IRS employees at a walk-in center refused to help him because they thought that his return was too complicated and beyond their level of training. Mr. Westcott did not challenge the collection method, i.e., the filing of the notice of tax lien. He did not offer an alternative means of collection, or raise a spousal defense to collection. Nevertheless, he expressed an interest in having an opportunity to go to court to resolve his tax dispute.

On August 29, 2007, the IRS issued a notice of determination in which it sustained the filing of the tax lien. The notice stated that the Westcotts had not disputed their unpaid tax liability in the second hearing, had not offered any collection alternative on their own accord, and had failed to provide a financial information statement and supporting documents required for the Appeals officer to consider collection alternatives.

Mr. Westcott filed a one-page letter with this Court on October 2, 2007 stating his "intention to appeal a 'Letter of Determination' decision of the [IRS]." He requested that appropriate forms be sent to him so that he could file a petition. This Court considered his one-page letter to be a

petition and issued an order requiring that the Westcotts file an amended petition.  Together, the Westcotts timely filed an amended petition on November 13, 2007, in which they stated:

> Title 26, Section 6020a of the Tax Code requires (dozens of case law define "may" as meaning "must" in statutes or constitutional provisions).  I.R.S. errs in refusing taxpayer one-on-one assistance in preparing tax return.  Since 1999 taxpayer has requested assistance and has been refused.  The attached determination notice does not address this issue.  However, taxpayer appealed the determination notice solely on 6020a grounds.  Appeals ignored taxpayer position.  Taxpayer requests all taxes - penalties + interest be abated for years 1998 thru 2004.[6] [sic]

The IRS filed its answer to the amended petition on January 16, 2008.  In the answer, the IRS did not argue that the new case was barred by collateral estoppel.  (Collateral estoppel, explained in greater detail below, is a doctrine that prevents parties from relitigating an issue heard and decided by a court.)  At a pretrial hearing in Dallas on December 2, 2008, Mr. Westcott appeared before the Court and admitted that the only argument he was asserting was that section 6020(a) of the Internal Revenue Code requires the IRS to assist taxpayers individually in preparing their returns.  The pretrial hearing continued on the next day.  Mr. Westcott stated:

---

[6]The IRS filed a Motion to Dismiss for Lack of Jurisdiction and to Strike as to the Taxable Years 1999, 2000, 2001, 2002, 2003, and 2004 on Nov. 29, 2007.  The Court granted the motion on Jan. 8, 2008 because the IRS had not issued notices of determination for the tax years 1999 through 2004.

Respondent's position that the previous case I had in Tax Court settled the issue that I'm bringing is actually incorrect.

The issue at that time of filing that case, I had no idea that 6020(a) existed. I was filing on a constitutional basis because I felt it was just grossly unfair to assist one group of taxpayers and not assist others.

I had no empirical evidence of that other than just an instinctive sense of fairness that that doesn't seem to be right, so that's why I brought that case. It didn't have anything to do with 6020(a).

At the pretrial hearing, Mr. Westcott executed a stipulation of facts and agreed to submit the case without a trial under Rule 122. Mrs. Westcott subsequently ratified the stipulation of facts and consented to submit the case under Rule 122 on October 12, 2009.

The Westcotts' short opening brief reiterates, in cryptic language, the argument made more clearly at the pretrial hearing, that section 6020(a) requires the IRS to assist them in preparing their return. It states that "[w]hen any entity promulgates a required form, inherent in the promulgation process is the obligation to provide whatever assistance the user needs to complete the form." It also declares that "Issues to be decided include whether or not Rules of Abatement apply. Or any other statute. And how much tax, interest, and penalties would be owed if assistance had been provided when requested. [sic]" In its answering brief, the IRS argues that the Westcotts "are collaterally estopped from raising the issue that the Internal

Revenue Service is required to prepare their 1998 or any other income tax return."  The IRS asserts that the issue the Westcotts raised in the lien hearing was the same issue raised in the levy hearing even though they relied on a different Code section for their argument (i.e., section 6020(a) instead of 6404(d)).  The IRS also claims that section 6330(c)(2)(B) prohibits the Westcotts from challenging the merits of their 1998 tax liability by demanding an abatement of taxes, penalties, and underpayment interest because they had a prior opportunity to be heard before this Court in the levy proceeding.  The IRS concludes that the Appeals officer did not abuse her discretion and that the collection action was appropriate.

<u>Discussion</u>

Before the IRS can forcibly collect tax from a taxpayer, it must first assess the tax.  If the taxpayer refuses to pay the assessment, the IRS can then seize the property of the taxpayer through its power of levy.[7]  Before the IRS can levy on property, it must first offer the taxpayer a section 6330 hearing.

---

[7]"The levy enables the Service to gain custody of taxpayer's property whether in the possession of the taxpayer or third parties."  Elliott, Federal Tax Collections, Liens and Levies, par. 13.01, at 13-6 (2d ed. 2008).  "The * * * levy does not determine whether the government's rights to the seized property are superior to those of other claimants; the levy does, however, protect the government against diversion or loss while such claims are being resolved."  <u>Id.</u>

Levy is not the only means of collecting an unpaid tax.  The assessment by the IRS automatically creates a Government property interest, called a lien, in all property owned by the taxpayer, and even in property later acquired by the taxpayer.  Sec. 6321.  The tax lien is not effective against four important classes of third parties until the IRS files a notice of lien with the appropriate state or local government in which the property is located.  Sec. 6323(a) and (f).  The IRS is required to notify the taxpayer within 5 business days after it files a notice of lien.  Sec. 6320(a)(1) and (2).  Within 30 days after the expiration of the 5-business-day period for sending the notification, the taxpayer is permitted under section 6320(a)(3)(B) to request a hearing with the IRS Appeals Office.

Thus, hearings concerning IRS levies are provided for in section 6330, and hearings concerning the filing of a notice of tax lien are provided for in section 6320.  The rules that govern the scope of a lien hearing are borrowed from the statutory provisions that govern a levy hearing.  Sec. 6320(c).[8]  Section 6330(c)(2) sets forth what issues can be raised by the taxpayer at a levy hearing, and, by operation of section 6320(c), it also governs what issues can be raised by the taxpayer at a lien hearing.  Section 6330(c)(2) provides:

---

[8]Sec. 6320(c) provides that "For the purposes of this section subsections (c), (d) (other than paragraph (2)(B) thereof), (e), and (g) of section 6330 shall apply."

(2)  Issues at hearing.--

    (A)  In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--

        (i) appropriate spousal defenses;

        (ii) challenges to the appropriateness of collection actions; and

        (iii) offers of collection alternatives, which may including the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.

    (B)  Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

The duties of the hearing officer in a levy hearing (and therefore also a lien hearing) are set forth in section 6330(c)(3).  That provision requires the hearing officer to make a "determination", and in making the determination the hearing officer must "take into consideration * * * the issues raised under [section 6330(c)(2)]".

Once the hearing officer has made the determination described above, the Tax Court can review the determination. Sec. 6330(d)(1).  Where the existence or amount of the underlying tax liability is properly at issue, the Court will review the determination de novo.  In cases involving taxpayers who do not dispute the existence or amount of their underlying tax liability

(or who are not permitted to do so because they had a prior opportunity to dispute it), the Court will review the determination of the Appeals officer for abuse of discretion. Lunsford v. Commissioner, 117 T.C. 183, 185 (2001); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). The latter inquiry hinges on whether the IRS's application of its discretion was "arbitrary, capricious, or without sound basis in fact or law." Giamelli v. Commissioner, 129 T.C. 107, 111 (2007); Woodral v. Commissioner, 112 T.C. 19, 23 (1999). As explained below, the Westcotts may not contest their underlying tax liability, and thus we review the determination for abuse of discretion.

We consider the only issue the Westcotts raised at their lien hearing, which is whether section 6020(a) required the IRS to prepare their income tax returns for 1999 through 2000, and whether the IRS's failure to do so entitles the Westcotts to be relieved of their tax liability and penalties. Section 6330(c)(2)(B) permits taxpayers to contest their "underlying tax liability" in collection due process hearings only if they did not receive a notice of deficiency or did not otherwise have an opportunity to be heard. The phrase "underlying tax liability" in this context includes the liability of the Westcotts for both tax and penalties. Vence v. Commissioner, 297 Fed. Appx. 827, 829 (11th Cir. 2008), affg. a Summary Judgment Order and Decision of this Court dated Jan. 9, 2008; Montgomery v. Commissioner, 122

T.C. 1, 7 (2004); <u>Fransen v. Commissioner</u>, T.C. Memo. 2007-237.

Mr. Westcott was barred from contesting the tax liability and

penalties because he had a prior opportunity to dispute them

during his levy hearing, an opportunity he pursued.[9]  Sec.

6330(c)(2)(B); <u>Spain v. Commissioner</u>, T.C. Memo. 2009-82; <u>Newsome

v. Commissioner</u>, T.C. Memo. 2007-111; see also <u>Bell v.

Commissioner</u>, 126 T.C. 356, 358-359 (2006); sec. 301.6320-

1(e)(3), Q&A-E7, Proced. & Admin. Regs.  In the lien hearing for

the same tax year, he was therefore limited to making appropriate

spousal defenses, challenging the appropriateness of collection

actions, and proposing collection alternatives.  See sec.

6330(c)(2)(A).  Mr. Westcott did not pursue any of these avenues,

and the IRS properly followed all procedures.  Therefore, the IRS

did not abuse its discretion in sustaining the filing of the

notice of tax lien with respect to Mr. Westcott.

Mrs. Westcott was not a party to the levy hearing.  However,

her failure to participate was her choice.  She was listed as an

addressee on the Final Notice of Intent to Levy and a Notice of

Your Right to a Hearing, but she did not request a hearing

_____

[9]It should be noted that Mr. Westcott was not prohibited
from contesting the underlying tax liability in his levy case
even though it was self-reported and summarily assessed.  This
Court has held "that section 6330(c)(2)(B) permits petitioners to
challenge the existence or amount of the tax liability reported
on their original income tax return [if] * * * they have not
received a notice of deficiency * * * and they have not otherwise
had an opportunity to dispute the tax liability in question."
<u>Montgomery v. Commissioner</u>, 122 T.C. 1, 9 (2004).

(either separately or jointly with her husband).  Her failure to request a hearing in response to the notice is dispositive.  The regulations state that

> The existence or amount of the underlying liability for any tax period specified in the CDP Notice may be challenged only if the taxpayer did not have a prior opportunity to dispute the tax liability.  If the taxpayer previously received a CDP Notice under section 6330 with respect to the same tax and tax period and did not request a CDP hearing with respect to that earlier CDP Notice, the taxpayer already had an opportunity to dispute the existence or amount of the underlying tax liability.

Sec. 301.6320-1(e)(3), Q&A-E7, Proced. & Admin. Regs.  Thus, just as the receipt of a notice of deficiency constitutes an opportunity to dispute the underlying tax liability, see sec. 6330(c)(2)(B), so does the receipt of a notice of intent to levy. Miller v. Commissioner, T.C. Memo. 2007-35.  Because she had an opportunity to dispute the underlying tax liabilities in response to the levy notices, and, if necessary, to file a petition with the Tax Court to challenge an adverse administrative decision, Mrs. Westcott is precluded from contesting the underlying tax liability in this case.  See Bell v. Commissioner, supra at 358-359; Nelson v. Commissioner, T.C. Memo. 2009-108; Tufft v. Commissioner, T.C. Memo. 2009-59; Awlachew v. Commissioner, T.C. Memo. 2007-365, affd. 312 Fed. Appx. 348 (1st Cir. 2009); Castleman v. Commissioner, T.C. Memo. 2007-143; Miller v. Commissioner, supra.  She did not make any appropriate spousal defenses, challenge the appropriateness of collection actions, or

propose any collection alternatives.  See sec. 6330(c)(2)(A).  We therefore sustain the lien against Mrs. Westcott as well.[10]

---

[10]The IRS also argues that the doctrine of collateral estoppel precludes the Westcotts from relitigating the issue of whether the IRS has an obligation to assist them with preparation of their income tax returns.  Collateral estoppel, or issue preclusion, "forecloses relitigation of issues actually litigated and necessarily decided in a prior suit."  Johnston v. Commissioner, 119 T.C. 27, 42 (2002) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979)); see also Montana v. United States, 440 U.S. 147, 153 (1979) ("[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.") (citing Parklane Hosiery Co. v. Shore, supra at 326 n.5; Commissioner v. Sunnen, 333 U.S. 591, 598-599 (1948); 1 Restatement, Judgments 2d, sec. 27 (1982).  Collateral estoppel serves "the dual purpose of protecting litigants from the burden of relitigating an identical issue and of promoting judicial economy by preventing unnecessary or redundant litigation."  Meier v. Commissioner, 91 T.C. 273, 282 (1988); see also Raju v. Rhodes, 7 F.3d 1210, 1214 (5th Cir. 1993).  The requirements for applying collateral estoppel are:

> (1) The issue in the second suit must be identical in all respects with the one decided in the first suit.
>
> (2) There must be a final judgment rendered by a court of competent jurisdiction.
>
> (3) Collateral estoppel may be invoked against parties and their privies to the prior judgment.
>
> (4) The parties must actually have litigated the issues and the resolution of these issues must have been essential to the prior decision.
>
> (5) The controlling facts and applicable legal rules must remain unchanged from those in the prior litigation.

Mitchell v. Commissioner, 131 T.C. __, __ (2008) (slip op. at 19-20) (citing Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), affd. 904 F.2d 525 (9th Cir. 1990)); Affiliated Foods, Inc. v.

(continued...)

In reaching our holding, we have considered all arguments made, and to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.

---

[10](...continued)
Commissioner, 128 T.C. 62, 71-72 (2007) (citing Peck v. Commissioner, supra at 166-167). The consequence of collateral estoppel is that "once an issue is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case." Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992); Weiner v. United States, 255 F. Supp. 2d 624, 643 (S.D. Tex. 2002) (citing Yamaha Corp. of Am. v. United States, supra at 254). The IRS asserts that for purposes of the applicability of collateral estoppel, the Westcotts' interpretation of sec. 6020(a) is merely a new argument in support of the larger, already-litigated issue of whether the IRS has an obligation to prepare their income tax returns. In light of our holding under sec. 6330(c)(2)(B), we need not decide whether collateral estoppel precludes the Westcotts from raising their sec. 6020(a) argument.